58841. ASKEA v. THE STATE.

SMITH, Judge.

Appellant was indicted on eighteen counts of burglary. At a pretrial hearing, appellant demurred to the indictment because of alleged defects in the form of the indictment and moved for severance of the eighteen counts for trial. The motion and demurrers were overruled. Appellant was convicted on five counts of burglary and one count of attempted burglary. In addition to the antecedent rulings shown above, this appeal enumerates as error: the admission of appellant's improperly induced inculpatory statement; improperly holding one of appellant's counsel in contempt and sentencing him in the presence of the jury; and improper

admission of appellant's inculpatory statements to a polygraph examiner. We reverse.

1. By special demurrer, appellant attacked each count of the indictment as failing to allege the location of each alleged burglary other than the county thereof. Each count of the indictment charged that appellant did "unlawfully . . . enter and remain within the residence and dwelling house of (name of victim) . . ." This court has long held that language comparable to that used here provided a sufficiently definite description of the place alleged to have been burglarized to withstand a demurrer. *Sellars v. State,* 113 Ga. App. 510 (149 SE2d 158) (1966); *Bishop v. State,* 42 Ga. App. 171 (155 SE 362) (1930); *Goodbread v. State,* 29 Ga. App. 195 (115 SE 44) (1922). This standard was not altered by our decision in *State v. Green,* 135 Ga. App. 622 (218 SE2d 456) (1975), requiring specification in a burglary indictment of the particular business structure burglarized when that business operates from two or more locations in the county. See *State v. Ramos,* 145 Ga. App. 301 (243 SE2d 693) (1978). A person's "residence and dwelling house" within a county sufficiently describes the particular and peculiar attributes of a house to properly inform the accused of the charges against him. The demurrer was properly overruled.

2. Appellant further demurred to the indictment on the grounds of improper joinder of offenses and moved to sever for trial the eighteen counts of burglary set out in the indictment. The indictment charged one count of burglary on November 3, 1978; one count on January 28, 1979; six counts on February 3, 1979; four counts on February 4, 1979; and two counts each on February 16, 17 and 18, 1979. The burglaries all occurred in and around Douglasville; the method of entry was very similar in each instance; the circumstances surrounding each incident were nearly identical — the time it occurred, the type of property stolen and the fact that only occupied residences were victimized.

Felonies of the same general nature, where the mode of trial is the same, may be joined in separate counts of the same indictment. *Anderson v. State,* 113 Ga. App. 670 (149 SE2d 398) (1966). The question then arises whether

these crimes were joined merely because they were of the "same or similar character" or whether they were "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." *Dingler v. State,* 233 Ga. 462, 463 (211 SE2d 752) (1975). The testimony elicited at trial established a continuing and repeated pattern of conduct connecting these offenses together, although perpetrated over a three-month period of time. The court in *Dingler* at 463 also stated: " 'If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution except . . . the court in the interest of justice may order that one or more of such charges be tried separately.' Code Ann. § 26-506 (b) and (c). Necessarily, then, severance in this particular kind of circumstance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique." See also *Padgett v. State,* 142 Ga. App. 139 (235 SE2d 545) (1977).

The trial judge did not abuse his discretion in denying the motion to sever.

3. During the course of a Jackson-Denno hearing, the following exchange occurred between defense counsel and an officer who had interrogated the defendant: "Q. When you took him into this little room, did you have any conversation with him back there? A. Yes, sir. Q. What was said? A. I requested him to tell the truth, and that he tell it. And, that I had worked a case on his brother. Q. Did you tell him it might go easier if he told anything? A. I told him it would probably help him in court. Yes, sir." A comment by an interrogating officer that it is always better to tell the truth is not such an inducement as to invalidate a confession. *Robinson v. State,* 229 Ga. 14 (1) (189 SE2d 53) (1972). However, the interrogating officer's remark that "it [i.e., telling the truth] would probably help him in court" holds out at least some hope of reward by special consideration if the suspect cooperates. We therefore conclude that appellant's inculpatory statements were inadmissible.

However, under the circumstances of this case, the admission of appellant's inculpatory statements was

harmless error since appellant testified at trial to the same facts that he provided in his inculpatory statements. *Hall v. State,* 243 Ga. 207 (1) (253 SE2d 160) (1979).

4. Appellant asserts that the trial court erred in holding appellant's counsel in contempt in the presence of the jury. Since it does not appear that a motion for mistrial was made, this enumeration of error raises no question for the consideration of this court. See *Ray v. State,* 38 Ga. App. 202 (3) (143 SE 603) (1928).

5. Appellant asserts that the trial court erred in admitting certain inculpatory statements made to a polygraph operator without benefit of a timely Miranda warning. Having previously cross examined appellant regarding inculpatory statements made to the investigating officers, the state questioned appellant as follows: "Q. Have you ever told anybody else about committing burglaries? A. No, sir. Q. You never told anybody else? A. No, sir. Q. I call your attention to the 4th day of February, 1979, and ask if you remember going to Atlanta with myself, your two attorneys, and talking with a Mr. Sy Harden. Do you recall doing that? A. Yes, sir. Q. Do you recall telling him that you committed a couple of burglaries?" At this point, out of the presence of the jury, appellant objected on the ground that he was not advised of his Miranda rights prior to this interrogation. The prosecution stated that it would introduce the interview solely to impeach appellant's statement that he had not told anybody else about committing any burglaries. The court overruled appellant's objection and cross examination continued as follows: "Q. Mr. Askea, I believe the last thing I asked, if you recall telling Mr. Sy Harden, in that you had committed two burglaries, or been involved in two burglaries — one in Paulding and one in Douglas County. Do you recall making that statement to him? A. It was in my past. Q. Does that mean you remember making the statement to him? A. Yes, sir. Q. Okay. I call your attention to the same time and date, the same location. Did you talk to him, and he asked you later, how many burglaries you had committed, and did you not tell him eight to ten? A. I don't recall. Q. You don't recall telling him — and then he clarified himself — and asked you, I mean in Douglas County. And, do you recall

answering six to eight? A. I don't recall that. Q. You don't recall making that statement to him? A. (No response). Q. Do you recall him asking you how many you committed? A. No." There is nothing in the record or the proceedings to indicate that the jury was cautioned by the court that the foregoing testimony was to be considered only for the purpose of assesssing appellant's credibility and not to establish his guilt of the offenses for which he was on trial. "Where inadmissible evidence as to a confession is offered and admitted, its admission constitutes reversible error, unless the jury is expressly instructed that the evidence is admitted for the purpose of impeachment only, whether or not a request to so charge be made, and whether or not any exceptions are made to the charge as given." *Colbert v. State,* 124 Ga. App. 283, 285 (183 SE2d 476) (1971). The state contends that since appellant was merely cross examined regarding prior inconsistent statements and since these statements were never actually introduced the violation of Miranda is irrelevant. We disagree.

The avowed purpose of the state's line of cross examination was impeachment. Its effect, however, was to place into evidence appellant's admission of past involvement in criminal activity, thereby improperly impugning his character before the jury. Further, the state imputed statements to appellant admitting involvement in several of the subject burglaries in this case. The state made no attempt to produce Mr. Harden to contradict appellant's statement. See *Sealy v. State,* 1 Ga. 213 (1846).

Absent a cautionary instruction from the court, the state's line of questioning did not show prior inconsistent statements. Rather, the questioning produced an admission of prior criminal activity and also placed indirectly before the jury the otherwise inadmissible confession made to Mr. Harden. Having succeeded in doing indirectly that which it was forbidden to do directly, the state's contention that these statements were never formally introduced into evidence is without merit.

Under the circumstances in this case, the court erred in failing to instruct the jury that this line of questioning was solely for the purpose of impeachment.

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

ARGUED NOVEMBER 19, 1979 — DECIDED MARCH 12, 1980 —

*Harold A. Lane, Kenneth L. Shigley,* for appellant.
*W. A. Foster, III, District Attorney, Frank C. Winn, Assistant District Attorney,* for appellee.