A94A0654. WALKER v. THE STATE.
(444 SE2d 824)

BEASLEY, Presiding Judge.

Walker appeals from his conviction on one count of criminal attempt to murder (OCGA § 16-4-1), two counts of false imprisonment (OCGA § 16-5-41), two counts of conspiracy to murder (OCGA § 16-4-8), two counts of aggravated sodomy (OCGA § 16-6-2), two counts of aggravated assault (OCGA § 16-5-21), and one count of burglary (OCGA § 16-7-1). Walker was tried with Mercer, who is not a party to this appeal.

The evidence is construed most favorably to the verdict. One victim was Walker's wife, and the other victim was his wife's daughter of a previous marriage. On October 1, 1992, the daughter entered the house shared with her mother in Columbus. She was surprised by Mercer, who had a knife, and was forced to remove her clothes and perform oral sodomy. She was then tied up. Her mother entered the house, answered the ringing telephone, and was also surprised by Mercer. The daughter listened on an extension telephone and told the caller to summon the police while Mercer made the mother continue the conversation and then hang up.

Mercer forced the mother and daughter into the same room and compelled the mother to disrobe and perform oral sodomy. He fondled each woman sexually and forced them to repeat sodomy. The doorbell rang and there were knocks on the door. Mercer told the mother to get dressed and "get rid of" whoever was at the door. Before she went to the door, Mercer told her that Walker, her husband, had hired him to kill her, that he had the transaction on tape,

and that he would tell her more after the visitors left.

Mercer accompanied the mother to the door. Two police officers were standing away from the door. The mother told them they were not needed and returned to the house. Mercer informed the victims he would be paid $20,000 from life insurance proceeds, he had let himself in with a key, the murder was to look like an accident, he had not expected to find the daughter there, and he was not prepared to kill both. He showed them the key and the mother recognized it as Walker's. During this time he made other references to Walker.

Mercer again told the mother he would inform her more about her husband's involvement. Friends of the victims arrived and Mercer fled. The mother left the house, drove away, and picked Mercer up and dropped him at a bar, hoping to join him later and find out more about her husband's involvement. When she returned to the house the police were present and she informed them that she had left Mercer at the bus station. On further inquiry, she revealed his whereabouts and he was arrested.

Testimony at trial disclosed that Walker had discussed "hit men" with three people, once mentioning his wife, that he had recently asked her whether he was the beneficiary of her life insurance policy, and that she had untruthfully told him he was. It was also revealed that his wife was planning to divorce him, he knew Mercer, had lent Mercer money and a pistol, and had Mercer's telephone number in his possession. At the time of the crimes, Walker was working in Tallahassee, Florida, during the week and was in Columbus only some weekends. He maintained that he had asked Mercer to retrieve clothing for him.

1. Walker contends that a directed verdict of acquittal on all counts should have been awarded because the only evidence of Walker's guilt was through a conspiracy theory, and the State failed to prove any conspiracy. In essence, Walker's argument is that the only evidence of a conspiracy is Mercer's statements to the victims. Without independent evidence establishing a conspiracy beyond a reasonable doubt, the declarations of a co-conspirator are not admissible as an exception to hearsay. *Chase v. State*, 179 Ga. App. 71, 73 (3) (345 SE2d 149) (1986). Therefore, Walker argues, Mercer's statements to the victims are simply hearsay, without probative value, and there is insufficient evidence to link Walker to the crime. *Harden v. State*, 210 Ga. App. 673, 675 (1) (436 SE2d 756) (1993).

The argument fails for several reasons. There is other evidence establishing a conspiracy. "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." OCGA § 24-3-5. Conspiracy can be shown by circumstantial evidence. *Guerra v. State*, 210 Ga. App. 102, 103 (1) (435 SE2d 476) (1993).

Circumstantial evidence showing a conspiracy included Walker's asking other persons about "hit men" and Mercer's possession of Walker's key. Neither defendant testified, but a videotape was played for the jury in which Walker stated he had lent Mercer $200 or $300 and a pistol, had given his key and Columbus address to Mercer so Mercer could get some clothes, and had told Mercer where his clothes were in the house. He also stated he did not know Mercer well, the clothes were everyday clothes, he had been at the house the week before, he had a cousin in the area who could have obtained the clothes, he was going to visit this cousin the day of the attack, and he planned on going to the house himself but not to retrieve clothes.

Mercer apparently arrived in Columbus by bus and took a taxi to the street where the attack occurred. He did not get off at the house and gave the driver an address that did not exist. He told the driver he was in town for a wedding. Mercer was in possession of the key, never stated to anyone he had come to Columbus for clothes, and never entered the room in which the clothes were kept.

This was a sufficient body of evidence from which a jury could find a conspiracy. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The jury was properly charged that it must find a conspiracy beyond a reasonable doubt before using the declaration of one conspirator against another.

Walker also argues that Mercer's implicatory statements came after any conspiracy had terminated and thus are not admissible under OCGA § 24-3-5. This is not a case in which one conspirator confesses to the police, implicating another conspirator and terminating the conspiracy. See *Gunter v. State*, 243 Ga. 651, 660-661 (7) (256 SE2d 341) (1979). To the contrary, Mercer made his initial statement that Walker had hired him to kill his wife before he knew the police were at the door. When he became aware of that fact, he did not surrender and confess but remained concealed in the house.

There is no evidence that Mercer abandoned the conspiracy when he stated he could not kill the victims now. A conspiracy to achieve an unlawful end includes other acts incidental to that end, and continues throughout the period necessary to effect the scheme, including attempts to hide the crime and the identity of the perpetrators. *Guerra*, supra at 103-104 (1); *Chews v. State*, 187 Ga. App. 600, 603-604 (2) (371 SE2d 124) (1988). When Mercer implicated Walker, he was still engaged in burglary, remaining in the house without authority after committing felonies there. OCGA § 16-7-1. Additionally, Mercer continued to try to hide his identity and escape the consequences of his actions by fleeing the house when one victim's fiancé began to enter. The conspiracy had not terminated at the time the statements were made.

Mercer's statements implicating Walker were also admissible as

part of the res gestae. OCGA § 24-3-3. He made them while still in the house, exerting some control over the victims, and thus during the enterprise. " ' "(A)cts are pertinent as a part of the res gestae if they are done pending the hostile enterprise, and if they bear upon it, are performed whilst it is in continuous progress to its catastrophe, and are of a nature to promote or obstruct, advance or retard it, or to evince essential motive or purpose in reference to it. . . ." (Cits.)' . . . [Cit.]" *Heflin v. State*, 204 Ga. App. 161, 162 (1) (418 SE2d 770) (1992).

Walker argues that there are insufficient indicia of reliability connected with the statements, but that is not the case. " 'Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. . . .' [Cit.] . . . The out-of-court declaration was a part of the res gestae and therefore was a well-recognized exception to the hearsay rule." *Williams v. State*, 202 Ga. App. 82, 84 (413 SE2d 256) (1991).

If, as Walker urges, the admissibility of Mercer's declarations are analyzed under *Dutton v. Evans*, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970), the declarations still bear sufficient indicia of reliability. *Dutton* upheld Georgia's hearsay exception for declarations of a co-conspirator and " 'identified at least four factors indicative of reliability: " '(1) (T)he declaration contained no assertion of a past fact, and consequently carried a warning to the jury against giving it undue weight; (2) the declarant had personal knowledge of the identity and role of participants in the crime; (3) the possibility that the declarant was relying upon faulty recollection was remote; and (4) the circumstances under which the statements were made did not provide reason to believe that the declarant had misrepresented the defendant's involvement in the crime.' " [Cit.]' [Cit.]" *Hunter v. State*, 179 Ga. App. 368, 369 (347 SE2d 2) (1986). A statement must bear at least some of these indicia. *Mooney v. State*, 243 Ga. 373, 390 (3) (254 SE2d 337) (1979).

In this case, all listed indicia of reliability appear except the first. Further, importantly, the total circumstances surrounding the statements indicate reliability. Mercer implicated Walker in the conspiracy without any coercion and with no apparent benefit to himself. In fact, the statement was against Mercer's own interest. It expanded his criminal jeopardy from burglary, aggravated assault, false imprisonment, and aggravated sodomy to include conspiracy to commit murder. Even if classified as the statements of a co-conspirator, Mercer's statements to the victims were not inadmissible hearsay and could form the basis of a finding that Walker had conspired.

2. Walker next contends it was error to deny his motion for directed verdict on the charge of burglary. A conspirator can be found guilty of all acts in furtherance of the conspiracy, even if those acts

were actually performed by another conspirator. *Bruce v. State*, 263 Ga. 273, 274-275 (5) (430 SE2d 745) (1993). Mercer had a key but was in the house without the authority of the residents and co-owner. OCGA § 16-7-1 (a). The only evidence that Mercer had authority to enter the house was presented in the videotape. This was contradicted by the testimony of Ms. Walker. Additionally, even if he had authority to enter, it was a jury question whether he had authority to remain, and a directed verdict was not warranted. *Hambrick v. State*, 174 Ga. App. 444, 446-447 (1) (330 SE2d 383) (1985).

3. It is next contended that it was error to deny the motion for directed verdict on the charge of sodomy, on the theory that the acts of sodomy were not necessarily done in furtherance of the conspiracy to commit murder. Defendants are accountable for other crimes committed by *co-conspirators in the course of conspiracies*, such as armed robbery when the conspiracy was to kidnap, *Shehee v. State*, 167 Ga. App. 542, 543 (1) (307 SE2d 54) (1983); possession of burglary tools when the conspiracy was to commit burglary, *Solomon v. State*, 180 Ga. App. 636 (1) (350 SE2d 35) (1986); murder when the conspiracy was to commit armed robbery, *Burke v. State*, 234 Ga. 512, 514 (2) (216 SE2d 812) (1975); and armed robbery when the conspiracy was to commit robbery, *Crawford v. State*, 210 Ga. App. 36 (1) (435 SE2d 64) (1993). " 'Conspirators are responsible for the acts of each other in carrying out the common purpose or design, although such acts may constitute another criminal offense.' " *Solomon*, supra at 636 (1). In this case, as in *Shehee*, supra, the acts of sodomy were not an automatic outgrowth of the crime plotted, such as burglary was under these facts, but it nevertheless grew out of the acts committed while one conspirator was engaged in furthering the criminal enterprise.

4. Walker contends it was error to deny his motion for directed verdict on the charge of attempt to murder, arguing that he could not be convicted of both conspiracy and attempt. He was sentenced for both crimes. The State argues that Walker can be convicted of both: because the murder was not completed, there is the crime plotted, murder, and the crime actually committed, attempted murder.

The same facts were used to prove Walker's guilt of both the conspiracy and the attempt to murder. Under either the "actual evidence test" urged by Walker, or the "required evidence test" approved in *State v. Burgess*, 263 Ga. 143, 145 (1) (429 SE2d 252) (1993), the crimes factually merge. The jury found that Walker hired Mercer to kill his wife. That was the fact used to prove his guilt of both conspiracy and attempted murder.

Additionally, the crimes in this case merge as a matter of law. "The state can charge conspiracy, prove the completion of the object *or of a substantive crime which is short of completion, such as attempt, but convict only of conspiracy. . . .* [C]onspiracy merges only

where there is conviction of a substantive offense which is a criminal aspect of the conspiracy; that offense may not even be the ultimate object of the conspiracy but may be a preliminary crime, such as . . . the substantive crime of attempt." (Emphasis supplied.) *Moser v. State*, 178 Ga. App. 526, 532-533 (2) (343 SE2d 703) (1986) (Beasley, J., concurring specially).

In either event, the conviction of criminal attempt to murder and the corresponding sentence must be vacated. OCGA § 16-1-7 (a) (1).

5. The admission of similar transactions is the next error enumerated. These were used to show that Walker had previously been interested in procuring a "hit man."

He first asserts that the notice failed to give the date and county of the transaction's occurrence, as required by USCR 31.3 (B). The notice stated that two transactions occurred in "1992" and one occurred "between 1989 and 1992 in the State of Florida, County unknown." He claims this imprecision precluded his procurement of a certified copy of one witness' conviction for impeachment purposes. The witness stated she had a conviction for possession of a controlled substance so any deficiency was harmless.

Walker also argues that the transactions were not sufficiently similar. Admission of separate transactions is proper where there is " 'sufficient similarity or connection between the independent crime (or transaction) and the offense charged.' " *Guyton v. State*, 206 Ga. App. 145, 146 (1) (424 SE2d 87) (1992). Here the crime charged was conspiracy to commit murder, by hiring another to perform the actual deed, while Walker remained in Tallahassee. The similar transactions were Walker's inquiries and statements about procuring someone else to perform the deed, and were made while he was working in Florida. The fact that these instances were not between Walker and Mercer does not make them inadmissible; they need not be identical to the crime proved. Id. The similarities between asking about hiring a killer and actually hiring one are sufficient to make the transactions admissible.

6. Error is enumerated in permitting Curtis Lambert to testify that Mercer had stated that Walker would give him a good job if Mercer would burn down a house in Georgia. As ruled previously, there was sufficient evidence to allow the jury to conclude that Mercer and Walker had formed a conspiracy. Lambert's testimony was admissible under OCGA § 24-3-5.

7. Allowing in evidence Mercer's redacted confession is also challenged, on the ground that two passages in the confession, "I was told she moved in with her boyfriend" and "I got the key three or four days ago" clearly implicated Walker. He argues that, even with the jury instruction that the confession could be used only against Mercer, his right to confrontation under *Bruton v. United States*, 391

U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), was violated.

"[E]vidence of the confession of a co-defendant implicating a defendant cannot be admitted against that defendant at a joint trial where the co-defendant does not take the stand and is not available for cross examination." *Reddish v. State*, 238 Ga. 136, 138 (1) (231 SE2d 737) (1977) (citing *Bruton*, supra). The implication of another defendant must be direct. It is not a *Bruton* violation if the redacted confession identifies the defendant only through the jury's making connections with other evidence and drawing inferences. *Bailey v. State*, 203 Ga. App. 133, 137 (3) (416 SE2d 151) (1992). " '[T]he statements *standing alone* must *clearly inculpate* the defendant. (Cits.)' (Emphasis supplied.) [Cit.]" *Owens v. State*, 193 Ga. App. 661, 662 (3) (388 SE2d 712) (1989). As in *Owens*, the co-defendant's statements were not inculpatory of appellant.

Additionally, error, if any, was harmless. Other witnesses testified that Mercer stated he had gotten the key from Walker and had been told by Walker that the stepdaughter was not expected to be in the house. See *McDonald v. State*, 210 Ga. App. 689, 691 (2) (436 SE2d 811) (1993).

8. The final enumeration is that Walker's requested charge on wholly circumstantial evidence should have been given. Written requests to charge are to be submitted "at the commencement of trial," although "additional requests may be submitted to cover unanticipated points which arise thereafter." USCR 10.3. The charge was submitted on the final day of trial. There is no suggestion that the use of circumstantial evidence was unanticipated. The court's refusal to give the requested charge was not error. *Webb v. State*, 184 Ga. App. 89, 90 (2) (360 SE2d 643) (1987).

Moreover, it was not properly adjusted to the evidence, for it included references to "bare suspicion" and "the case for the State rest[ing] entirely upon circumstantial evidence." The law requires that "[a] request to charge itself must be correct, legal, apt, and precisely adjusted to some principle involved in the case. If *any portion* of the request is inapt or incorrect, denial of the request is proper." *Smith v. State*, 209 Ga. App. 540, 544 (5) (433 SE2d 694) (1993).

*Judgment affirmed in part and reversed in part, with direction. Andrews and Johnson, JJ., concur.*

DECIDED MAY 17, 1994 —
RECONSIDERATION DENIED JUNE 1, 1994 — ■

*Michael D. Reynolds*, for appellant.
*Douglas C. Pullen, District Attorney, J. Gray Conger, Jerry G.*

*Croley, Jr., Assistant District Attorneys,* for appellee.