### A96A1450. LEIGH v. THE STATE.
(478 SE2d 905)

BLACKBURN, Judge.

Joshua Timothy Leigh appeals his convictions for party to the offenses of armed robbery, possession of a firearm during the commission of a felony, and theft by taking. He contests the sufficiency of the evidence, contends that his custodial statement should not have been admitted into evidence, and asserts the trial court erred in charging the jury.

On December 15, 1994, Leigh and his co-indictees, Anthony Charles Gilleland and Scott Christopher Payne, rode past the Quillian's Corner branch of the First National Bank of Gainesville and made plans to rob it. The next day, the following items were obtained: a getaway motorcycle; two handguns, taken without permission from Gilleland's parents' home; pillowcases to hold the money; and pantyhose for use as a disguise. While Leigh waited in a nearby field with Gilleland's car, Gilleland and Payne rode the motorcycle to the bank to rob it. This robbery was never completed, as Gilleland crashed the motorcycle on the way to the bank, injuring Payne's ankle. After stopping outside the bank, the two returned to the field where Leigh was waiting.

After the failed first attempt, the three men proceeded to a spot near another bank. Leigh and Payne waited with the car in a designated area while Gilleland took the motorcycle and a gun and robbed

the bank. Following the robbery, Leigh and Payne picked Gilleland up in Gilleland's car, and the three split the proceeds of the robbery. All three men were subsequently arrested, and Gilleland pled guilty and was sentenced in federal court. As part of his plea-bargain agreement on his state charges, Gilleland testified against Leigh at trial. Payne also testified against Leigh at trial.

1. Leigh argues that his custodial statement was erroneously admitted because it was not knowing and voluntary. First, Leigh argues that his statement was improperly induced by the interrogating officer, who inferred that Leigh might receive more favorable treatment from the prosecutor and the trial court if he cooperated by making a statement. Second, Leigh argues that, at the time of the confession, he was mentally incapable of making a knowing and voluntary statement.

With respect to Leigh's first argument, as he was interviewed by Investigator John Sisk, Leigh was told, "if you want to tell us what happened, tell us your side and cooperate, it can't do anything but help you." When Leigh asked how his cooperation would help, Sisk told him, "on down the road, the court proceedings and all that. The judge and D. A. . . . always ask, you know, did you cooperate with us, did you not cooperate with us." Leigh contends his subsequent confession was invalid because Investigator Sisk's statements created the hope of benefit in violation of OCGA § 24-3-50.

When a trial judge holds a suppression hearing and determines the voluntariness of a confession, that determination will be upheld on appeal unless clearly erroneous. *Burton v. State*, 212 Ga. App. 100, 102 (441 SE2d 470) (1994). In support of his argument, Leigh cites *Askea v. State*, 153 Ga. App. 849 (267 SE2d 279) (1980). In *Askea*, the defendant's custodial statement was rendered inadmissible after the interrogating police officer informed the defendant that if he told the truth, it would probably help him in court. *Askea*, supra at 851.

This case is factually distinguishable. Unlike the officer in *Askea*, Investigator Sisk did not limit his comments to merely telling Leigh that talking "would probably" help Leigh in court. See *Askea*, supra at 851. Instead, Investigator Sisk immediately and specifically explained his comment, telling Leigh that should they ask, Investigator Sisk would inform the judge and the district attorney of Leigh's cooperation in the investigation. "We have construed the 'slightest hope of benefit' as meaning the hope of a lighter sentence. Merely telling a defendant that his or her cooperation will be made known to the prosecution does not constitute the 'hope of benefit' sufficient to render a statement inadmissible under OCGA § 24-3-50." (Citations and punctuation omitted.) *Arline v. State*, 264 Ga. 843, 844 (2) (452 SE2d 115) (1995). See also *Autry v. State*, 210 Ga. App. 150 (435 SE2d 512) (1993).

*Lyles v. State*, 221 Ga. App. 560, 561 (472 SE2d 132) (1996) is similar to this case, and in *Lyles*, the confession was upheld although the interrogating officer told the defendant that if he cooperated, the officer would mention the defendant's cooperation to the district attorney, and that it might help the defendant. Furthermore, like the defendant in Lyles, Leigh signed a form which acknowledged that he had not been promised anything. Investigator Sisk testified that neither he nor any other officer made Leigh any promise, benefit, or hope of reward if Leigh agreed to talk. In light of the above, the trial court's denial of Leigh's motion to suppress the statement was not clearly erroneous.

Aside from the hope of benefit, Leigh also contends that his waiver of rights was not knowing and voluntary. He argues that when he made his statement, he was 17 years old, had a ninth-grade education, and had smoked excessive amounts of crack cocaine hours before making the statement.

"The question of whether a waiver of rights and a subsequent statement have been voluntary and knowing depends on the totality of the circumstances." *Reinhardt v. State*, 263 Ga. 113, 115 (428 SE2d 333) (1993). Our review of Leigh's videotaped statement confirms the trial court's ruling that Leigh freely and voluntarily waived his rights. Officer Sisk testified that he advised Leigh of his rights, and that Leigh acknowledged that he understood those rights, both verbally and in writing. Sisk further testified that Leigh's responses were appropriate to the questions asked, and that Leigh did not appear to be under the influence of drugs, alcohol, or intoxicants. The trial court's finding that Leigh freely and voluntarily waived his rights was therefore not clearly erroneous.

2. Leigh argues that the evidence is insufficient as a matter of law to prove beyond a reasonable doubt that he was a party to the offenses of armed robbery, possession of a firearm during the commission of a felony, and theft by taking. He also contests the sufficiency of the evidence corroborating the testimony of the accomplice, Anthony Gilleland. "On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. . . . As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Punctuation omitted.) *Ferguson v. State*, 221 Ga. App. 415, 419 (471 SE2d 528) (1996).

Leigh argues that he did not aid, abet, or encourage the commis-

sion of any of the crimes for which he was convicted, and that his involvement in the crimes did not rise to a level sufficient to sustain his conviction as a party to those crimes. OCGA § 16-2-20 provides in pertinent part: "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. . . . A person is concerned in the commission of a crime only if he . . . [i]ntentionally aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime."

With respect to the offenses of armed robbery and possession of a firearm during the commission of a felony, the evidence allowed the jury to find that Leigh initiated the robbery idea and agreed with the suggestion to rob a bank. He obtained pillowcases and hosiery disguises for use in the robbery, and helped locate a bank to rob and a hiding place near that bank. He waited in a hiding place for Gilleland to rob the bank at gunpoint, and then picked Gilleland up after the robbery took place. Upon completion of the crime, Leigh accepted approximately $700 worth of stolen money from Gilleland.

"[C]riminal intent may be found by the jury upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. . . . [P]resence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Punctuation omitted.) *Norris v. State*, 220 Ga. App. 87, 89 (469 SE2d 214) (1996). Additionally, "[c]onspiracy may be proven by direct or circumstantial evidence." (Punctuation omitted.) *Okongwu v. State*, 220 Ga. App. 59, 61 (467 SE2d 368) (1996). Applying these standards to the facts of this case, the evidence is sufficient to sustain the convictions for armed robbery and possession of a firearm during the commission of a felony under *Jackson v. Virginia*, supra.

Leigh also argues that the evidence presented was insufficient to corroborate the testimony of the accomplice, Gilleland. Although OCGA § 24-4-8 prevents the conviction of a defendant in felony cases where the only witness testimony is the uncorroborated testimony of an accomplice, "slight evidence of a defendant's identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony, and thus, support the verdict. . . . The necessary corroboration may be by circumstantial evidence." (Punctuation omitted.) *Stephenson v. State*, 220 Ga. App. 95, 96-97 (469 SE2d 266) (1996). Moreover, "an accomplice's testimony may be corroborated by the testimony of another accomplice." Id. at 97. As the testimony regarding armed robbery and possession of a firearm was corroborated by Gilleland, Payne, and even Leigh's own statement, this contention is without merit. The evidence was sufficient to

authorize the jury's finding of Leigh's guilt beyond a reasonable doubt. *Jackson v. Virginia*, supra.

Leigh contests the sufficiency of the evidence as to his conviction for party to theft by taking. This conviction is based on Gilleland's theft of two guns from his parents' home. Leigh seeks reversal of this conviction because the state failed to prove that Leigh knew Gilleland had stolen the guns.

The law in Georgia governing the liability of conspirators for the acts of co-conspirators is well-settled. "The elements of proof that one is a party to a crime . . . [require] proof of a common criminal intent. . . . When individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one of the conspirators is in legal contemplation the act of all, subject to the qualification that each is responsible for the acts of the others only so far as such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy." (Punctuation omitted.) *Crawford v. State*, 210 Ga. App. 36, 37 (435 SE2d 64) (1993).

The case of *Walker v. State*, 213 Ga. App. 407 (444 SE2d 824) (1994) addresses the issue of a conspirator's liability for a crime committed by a co-conspirator outside of the original conspiracy plan. Walker hired Mercer to kill Walker's wife, but instead of murdering the victim as planned, Mercer sodomized her and her daughter. Walker's convictions on two counts of sodomy were affirmed, and this Court held that "[c]onspirators are responsible for the acts of each other in carrying out the common purpose or design, although such acts may constitute another criminal offense." (Punctuation omitted.) *Walker*, supra at 411. Although "the acts of sodomy were not an automatic outgrowth of the crime plotted, . . . [they] nevertheless grew out of the acts committed while one conspirator was engaged in furthering the criminal enterprise." Id.

In this case, the parties entered into an agreement to commit an armed robbery, and as part of that agreement, determined that a gun would be needed. It was decided between the three, without addressing the issue of permission, that the gun would come from Gilleland's parents' house. Gilleland then stole the guns and used them in the robbery.

Applying the analysis of *Walker*, the jury was entitled to find that Gilleland's theft of the guns was naturally, necessarily done pursuant to the parties' conspiracy. "[E]verything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done, or written by each of them. . . . [T]his joint responsibility extends not only to what is done by any of the conspirators pursuant to the original agreement *but also to collateral acts incident to and growing out of the original purpose.*" (Emphasis supplied; punctuation omitted.) *Crawford*,

supra at 38. Leigh's conviction for party to theft by taking is accordingly affirmed.

Having already addressed the sufficiency of the evidence in this division, it is unnecessary to address Leigh's arguments regarding the trial court's failure to grant his motions for directed verdict of acquittal and new trial.

3. Leigh enumerates as error the trial court's charge on knowledge, which stated: "[S]hould you find beyond a reasonable doubt . . . that the defendant had knowledge that the crimes of armed robbery or burglary or theft by taking or possession of a firearm in the commission of a felony were being committed . . . and that the defendant knowingly and intentionally participated or helped in the commission of any one of these crimes, then you would be authorized to convict the defendant of any of the crimes of which you would find the defendant had knowledge as I have just defined knowledge to you." Leigh reserved his right to object to the charge, and now argues that the disjunctive use of the word "or" allowed the jury to find him guilty of any crime named so long as it found he had knowledge of any other crime named.

Leigh requested the pattern charge on knowledge, which is substantially the charge the court gave. See Council of Superior Court Judges, Suggested Pattern Jury Instructions, p. 21. Although Leigh now argues he was prejudiced because the charge was misleading and confusing, "[t]he charge to the jury is to be taken as a whole and not out of context when making determinations as to the correctness of same." (Punctuation omitted.) *Garren v. State*, 220 Ga. App. 66, 68 (467 SE2d 365) (1996). "[W]e do not believe that the charge as a whole would mislead a jury of average intelligence." *Dooley v. State*, 221 Ga. App. 245, 246 (470 SE2d 803) (1996). This enumeration is therefore without merit.

*Judgment affirmed. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED DECEMBER 3, 1996 — 

*William M. Brownell, Jr.*, for appellant.

*Lydia J. Sartain, District Attorney, Leonard C. Parks, Jr., Assistant District Attorney*, for appellee.