### A11A0643. CLARK v. THE STATE.
(711 SE2d 339)

ADAMS, Judge.

Timothy Clark was tried and convicted of aggravated child molestation, child molestation, and cruelty to children on charges involving three children, ages twelve, ten and four at the time. Clark does not contest the sufficiency of the evidence as presented, which included his confession and testimony from the children, investigators who interviewed them, and family members, all of which was consistent with his confession. On appeal, he asserts that five reversible errors occurred at trial.

1. Clark first contends the trial court erred by attempting to rehabilitate several jurors who responded in the affirmative to the following question:

Now, you know, as Judge Smith has told you, what the charges are . . . and we're going to talk about some delicate subject matter. You know why you're here. How many of you just can't do it? You can't be fair one way or the other because of the subject matter that we're talking about? Anybody?

One juror responded, "I don't know if I could." Clark's counsel continued, "Fair enough. That's what I'm saying, and *if you're not sure*, raise your hand." (Emphasis supplied.) Five prospective jurors responded in the affirmative, and Clark's counsel moved to strike them for cause without asking any follow-up questions.

The court then spoke to the jurors at length about the difficulty of being fair given the subject matter; about how they were not being asked to say whether child molestation is bad or whether someone likes it; about the duty of a juror to sit in judgment of the State's evidence and to determine whether it proves a person guilty beyond a reasonable doubt; about the duty to acquit if the evidence does not meet that standard; about the duty of citizens to protect each other from being wrongly accused; and, ultimately, about how the real issue is whether the person could "sit in this box as a citizen, as a juror, and listen to the evidence in this case and to determine whether or not the State can prove these charges beyond a reasonable doubt. That is your duty." The court added that "you have to be able . . . to put [your personal feelings] aside in light of the overriding duty to be fair and impartial and to listen to this evidence and to make a determination based upon the evidence presented in this courtroom." The court then asked each of the five whether they could fulfill that duty, and each replied that they could. The court therefore declined to strike them for cause.

We review the court's decision for abuse of discretion keeping in mind the broad general principle that "each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial." *Park v. State*, 260 Ga. App. 879, 880-881 (1) (581 SE2d 393) (2003).

Given that the voir dire does not show that the jurors "formed an opinion on the guilt or innocence of appellant that was so fixed and definite that [they] would be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence," Clark has not shown any abuse of discretion in the court's rehabilitation or in the manner in which the voir dire was conducted. *Ros v. State*, 279 Ga. 604, 606 (4) (619 SE2d 644) (2005).

2. Clark contends the court erred by closing the courtroom during the testimony of the child victims. The Sixth Amendment and the Constitution of Georgia guarantee the right to a public trial:

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." The Sixth Amendment rights are applicable to the states. *Kesler v. State*, 249 Ga. 462, 471 fn. 5 (291 SE2d 497) (1982). The Constitution

of Georgia also provides for a public trial for criminal defendants. Const. of Ga. 1983, Art. I, Sec. I, Par. XI (a).

*Purvis v. State*, 288 Ga. 865, 866 (708 SE2d 283) (2011). That right " 'may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. (Cit.)' (Punctuation omitted.) *Presley v. Georgia*, [558 U. S. ___, ___ (130 SC 721, 175 LE2d 675) (2010)]." Id. at 869 (1). In this State, because "there is a compelling state interest in protecting children while they are testifying concerning a sex offense," *Delgado v. State*, 287 Ga. App. 273, 279 (651 SE2d 201) (2007), when a child under age 16 testifies concerning any sex offense, the court may clear the court "of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, and court reporters." OCGA § 17-8-54.

Here, before the youngest sexual abuse victim testified, the State requested that the court clear the courtroom "of nonessential personnel for [the child's] testimony." The court then announced that persons "who are not associated with this case or who are not otherwise an officer of this court will need to step out of the courtroom . . ."; the court also said, "if you are not an officer of the court or a bailiff, you will need to step out. . . ." The record states that "the spectators exited the courtroom." Clark's counsel objected on the ground that "[Clark] is entitled to an open and public trial. I object to the Court closing the courtroom"; he later renewed the same objection. The court explained its ruling: "[T]he Court finds that public policy outweighs the previous concern weighed by you on the protection of the identity of the juvenile witness. . . ." After the two sexual abuse victims testified, the court opened the courtroom.

Neither at trial nor on appeal, has Clark identified any specific people or category of people who he contends were wrongly excluded. Therefore, Clark has not shown that the trial court violated OCGA § 17-8-54 in any specific manner. And because "the partial closure permitted under [that] statute does not violate a defendant's Sixth Amendment right to a public trial," *Delgado v. State*, 287 Ga. App. at 279 (2), citing *Hunt v. State*, 268 Ga. App. 568, 571 (1) (602 SE2d 312) (2004), Clark has not shown that the trial court violated his constitutional rights.

3. Clark contends the court erred by admitting his in-custody statement. At a *Jackson-Denno* hearing, the trial court examines the totality of the circumstances to determine whether a preponderance of the evidence shows that the confession was voluntary. *Bell v. State*, 280 Ga. 562, 564 (629 SE2d 213) (2006). "Unless clearly erroneous,

a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal." Id.

(a) Clark first contends the State violated the rule that "[a]n interrogating officer cannot induce a confession by offering hope of a lighter sentence." *Burdette v. State*, 251 Ga. App. 30, 31 (1) (553 SE2d 340) (2001). See also *Caffo v. State*, 247 Ga. 751, 757 (279 SE2d 678) (1981). He argues that the officer's testimony that she offered "help in the court proceedings" showed that she made improper promises of a benefit in exchange for Clark's confession.

The hearing transcript shows that Clark, who was one day shy of his 18th birthday at the time of his arrest, was read *Miranda* warnings twice; he then signed a waiver of those rights. When asked if he knew why he was being questioned, Clark began speaking so quickly that the officer had to stop him in order to turn on the recording equipment. On tape, the officer again reviewed Clark's rights and the waiver form.

It was Clark who first raised the topic of getting help. Right after the *Miranda* warnings and before the tape was turned on, he commented "that he needed help for what he had done." Clark then told about burning the oldest child and about a sexual encounter with the ten-year-old. Clark initially denied anything improper with the four-year-old, even after questioning. The officer said, "there is a problem . . . [if] you think that is normal behavior[;] obviously due to the fact that is not normal behavior you obviously need some sort of help. . . ." Later, Clark asked "Any way I can get help[?]" The officer replied,

> Yeah I am sure there is, Timothy I am sure there is. Like I said you are going to need a lot of help, but there is no denying, you are going to need help. But the best thing to do right now . . . have you told me the truth about everything?

(Punctuation supplied.)

Eventually, when Clark appeared to have nothing more to say, the tape was turned off; it was at that point that Clark began to sob at length. The officers let Clark sit there and sob, and eventually Clark again said that he wanted help. He then began to tell what happened with the youngest child. Again, the officer had to stop him while she turned on the recorder. Also, at one point the officer testified, "Now, he had advised me before that he wanted help and I had told him while the tape was on that the only way to get help is you have to tell the truth, you have to admit what you've done wrong. . . ."

During the *Jackson-Denno* hearing, when asked "now, when

we're talking about help, what kind of help are we talking about?'', the officer replied:

> Well, apparently any kind of help that he would be able to get in, you know, in the court system, whether it be some kind of counseling. I mean, I don't know. There was nothing in my mind. I couldn't help him, of course. . . . Just help for his problem basically . . . he had mentioned he had urges and these are things he needed help with.

On cross-examination, when again asked about the nature of the help being discussed, the officer said, "Well, it was obvious it was help in the court proceedings." And that to get that help, Clark needed to tell the truth about what he needed help with. On further cross, the officer clarified, "[m]ental health is what he meant through the court system." And she also denied that the help meant incentives or leniency in sentencing. The officer also testified that she did not threaten Clark, make promises to him, or comment about any kind of lesser sentence.

"The promise of a [hope or] benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect." *White v. State*, 266 Ga. 134 (3) (465 SE2d 277) (1996). Here, the evidence presented at the *Jackson-Denno* hearing was certainly sufficient for the trial court to have concluded by a preponderance of the evidence that the officer did not make a promise or offer of a special benefit or a lighter sentence in exchange for his testimony, but rather only an offer for help addressing his psychological issues. Compare *Askea v. State*, 153 Ga. App. 849, 851 (3) (267 SE2d 279) (1980) ("interrogating officer's remark that 'it (i.e., telling the truth) would probably help him in court' holds out at least some hope for reward by special consideration if the suspect cooperates"). Furthermore, like the defendant in *Leigh v. State*, 223 Ga. App. 726, 728 (478 SE2d 905) (1996), Clark "signed a form which acknowledged that he had not been promised anything. . . . In light of the above, the trial court's denial of [Clark's] motion to suppress the statement was not clearly erroneous."

(b) Clark next contends the court erred by admitting the portion of the confession related to aggravated child molestation because, before the questioning began, the officer only told him that she was investigating child molestation. The *Miranda* waiver form refers to cruelty to children in the first degree, child molestation, and contributing to the delinquency of a minor. Clark argues that he was therefore tricked into confessing to aggravated child molestation, which carries a 25-year, mandatory minimum sentence. Clark's argument is without merit. See *Bazansilva v. State*, 251 Ga. App.

608, 610 (554 SE2d 794) (2001) (confession admissible even though officer did not inform suspect of charges against him so long as juvenile suspect had knowledge of the "substance of the charge").

(c) Clark also contends that he invoked his right to remain silent. But the record shows otherwise. "If the [person in custody] indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U. S. 436, 473-474 (86 SC 1602, 16 LE2d 694) (1966).

> The relevant portion of the interview went as follows:
>
> Q: You realize that [the relationship with the youngest child] is over[?]
>
> A: What with [the child]? Why? I didn't do anything to him.
>
> Q: Well he don't see it that way.
>
> A: Oh God.
>
> Q: And ain't no one else going to see it that way[,] you have anything else to add to the interview, anything else to help yourself.
>
> A: No.[1]
>
> Q: Well if you do[,] speak[,] if not I am going to conclude the interview.
>
> A: Any way I can get help[?]

In this dialogue, we fail to see how Clark's statement that he did not have anything else to add to the interview constitutes an indication that he wishes to remain silent or that he was attempting to cut off questioning. At most, it was ambiguous, which is not enough. See *Davis v. United States*, 512 U. S. 452, 461-462 (II) (114 SC 2350, 129 LE2d 362) (1994) ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."). See also *Perez v. State*, 283 Ga. 196, 199 (657 SE2d 846) (2008) (" 'We see no reason to apply a different rule to equivocal invocations of the right to cut off questioning.' [Cit.]"). Rather, it would appear that Clark simply indicated that he had nothing else to add on the topic of the youngest child victim. The officer then indicated that he might conclude the interview, and Clark asked another question which continued the interview.

4. Clark contends the trial court improperly restricted the scope of cross-examination of the investigating officer. Clark's counsel wanted to ask the officer about why she failed to tell Clark before the interrogation began about the allegation of aggravated child moles-

---

[1] The transcript states that Clark responded "Hugh Ugh"; after listening to the recording of the statement, the trial judge determined that Clark said "no."

tation, which has a mandatory minimum sentence. Clark's counsel explained to the court that he wanted to show that the officer intentionally omitted mention of aggravated child molestation in order to attempt to get Clark to confess to a crime that had a 25-year, mandatory minimum sentence. He claimed that it was misleading to tell Clark only that he was being investigated for the other lesser crimes, and that therefore, he did not know what rights he was waiving and his confession was not voluntary.

But counsel admitted the officer did not have a duty to go over the potential punishments prior to questioning Clark. And counsel did not show that Clark would have known that aggravated child molestation carried a mandatory minimum sentence. The court added that, accordingly, had the officer mentioned she was investigating aggravated child molestation, Clark could not show he would have chosen not to speak. The court did allow Clark to argue to the jury that the higher charge was not included on the *Miranda* waiver form. But the court would not allow the jury to hear about the mandatory minimum sentencing because evidence of punishment is not proper for the jury. Accordingly, the trial court disallowed this line of questioning.

We find no error. Possible punishment evidence is not admissible because it may "divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." (Citations and punctuation omitted.) *Rivers v. State*, 265 Ga. 694, 697 (6) (461 SE2d 205) (1995).

5. Finally, Clark contends the trial court erred by refusing to admit defense exhibit 3 in unredacted form. The exhibit was a report prepared by an officer who had been assigned to the case but who was subsequently killed in Iraq during military service; consequently the exhibit was admitted under the necessity exception. Upon an objection by the State, the court required that one paragraph of the report be redacted. The paragraph in question stated the following:

This family had made four allegations of child molestation all with different offenders in the past four years. The subject children have been examined several times without any evidence of sexual abuse (see attachments).

The trial court determined that this portion of the officer's report was double hearsay.

Documents are admissible under the necessity exception if two requirements are met: "the unavailability of the declarant and a circumstantial guaranty of trustworthiness." *Herrera v. State*, 288 Ga. 231, 235 (5) (702 SE2d 854) (2010). "In determining whether an

out-of-court statement bears sufficient indicia of trustworthiness, we look at the totality of the circumstances. [Cit.] Whether a statement is trustworthy is a matter for the trial court's discretion. [Cit.]" Id.

Here, we cannot say the trial court abused its discretion in determining the statement was not admissible. The statement was made by the deceased officer and it was based on statements made by "the family" and whoever performed the sexual abuse examinations. Thus, it was double hearsay, which, in general, is inadmissible. See *Harper v. State*, 152 Ga. App. 689, 690 (1) (263 SE2d 547) (1979). Moreover, the redacted material shows that there were "attachments" that might shed further light on the trustworthiness of the statement about the examinations. But those documents were not tendered and are therefore not available to show any possible trustworthiness. And no other evidence was presented to show that these statements had a sufficient indicia of trustworthiness.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JUNE 2, 2011.

*Scott J. Forster*, for appellant.

*T. Joseph Campbell, District Attorney, Elizabeth M. York, Assistant District Attorney*, for appellee.