A95A0889. FORD v. THE STATE.
(466 SE2d 11)

POPE, Presiding Judge.

Keith Ford was tried with co-defendant Kamal Naim Hassan and convicted of armed robbery.[1]

Viewing the evidence in the light most favorable to the verdict, on July 31, 1993, after midnight, the victim was stopped at a traffic light in her Volkswagen Passat when Ford tapped on her window with a gun. He shouted obscenities at her through the window and told her to get out of the car and to give the car up. She got out, taking her purse and her daughter, who was accompanying her in the vehicle. Ford got into the driver's seat, a second man got in the back seat, and they drove off in her car. The victim identified the man with the gun as Ford from a photographic lineup; she also positively identified him at trial.

Although the victim's daughter, who was nine years old at the

---

[1] Hassan was convicted of armed robbery and theft by receiving stolen property; his conviction was affirmed in *Hassan v. State*, 216 Ga. App. 484 (455 SE2d 314) (1995).

time of the crime, could not identify the perpetrator of the crime, she recalled that a man knocked on the window of the car with a gun.

Later on July 31, 1993, a police officer observed a Volkswagen Passat in the wrong lane of travel; she saw the vehicle swerve and leave the road a couple of times. The vehicle was eventually stopped, and Hassan, the driver, was apprehended. Hassan was taken to police headquarters where he gave a statement. Based on this investigation, Ford was arrested on August 6, 1993.

Neither Ford nor Hassan testified at trial. Ford's defense was mistaken identity.

1. In his first enumeration, Ford contends that the eyewitness testimony was unreliable, and therefore, the evidence was insufficient to convict. We disagree and find that a rational trier of fact could find from the evidence adduced at trial proof of Ford's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Secondly, Ford claims that the trial court erred in failing to grant a mistrial when a detective improperly testified that Ford refused to give a statement after being read *Miranda* warnings at the time of his arrest. The objected-to testimony was in response to a question from the prosecutor as to whether biographical information was taken from Ford when he was taken into custody. The detective testified: "Yes, I did. I read Mr. Ford his *Miranda* warnings and he refused to give a statement." Ford's attorney moved for a mistrial outside of the jury's presence. Ford's attorney stated that if the court denied the motion, he would request curative instructions. The court denied the motion, but complied with the request for curative instructions, recognizing that the jury had been informed during preliminary instructions that the State had the burden of proof. In giving curative instructions, the court charged the jury that the State had the burden of proof beyond a reasonable doubt; that the defendant was not required to produce any evidence regarding his innocence; that no defendant is required to make a statement; and that any testimony to the contrary should be disregarded. Ford then renewed his motion for mistrial.

"In criminal cases, a comment upon a defendant's silence . . . is far more prejudicial than probative. . . . A motion for mistrial is within the discretion of the trial court. This court will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial is essential to the preservation of the right to a fair trial." (Citations and punctuation omitted.) *Dowdy v. State*, 209 Ga. App. 95 (1) (432 SE2d 827) (1993); *Chapman v. State*, 263 Ga. 393, 394 (1) (435 SE2d 202) (1993). Although the evidence here was not overwhelming, see *Gibbs v. State*, 217 Ga. App. 614 (458 SE2d 407) (1995), it was quite strong. See generally *Hill v. State*, 250 Ga. 277 (4)

(295 SE2d 518) (1982).

We conclude that the trial court properly denied Ford's motion for mistrial. "Improper reference to a defendant's silence, however, does not automatically require reversal. Here, the trial court promptly gave curative instructions on the State's unalterable burden of proof and the right of the accused to keep silent, and unambiguously instructed the jury that they were not permitted to draw any adverse inference from the fact the accused had asserted his right to silence. Moreover, it appears that the comment objected to was inadvertent and unresponsive on the part of the witness, and was not an intentional reference by the prosecution to the silence of the defendant where an innocent man would protest his innocence. Under these circumstances, the trial court did not abuse its discretion in denying appellant's motion for mistrial." (Citations and punctuation omitted.) *Sims v. State*, 213 Ga. App. 151, 152 (2) (444 SE2d 121) (1994).

3. Next, Ford contends that the trial court erred in proceeding with pre-trial evidentiary hearings in his absence. The State argues Ford was voluntarily absent and waived his right to be present.

The portion of the hearing which began in Ford's absence concerned the voluntariness of co-defendant Hassan's statement. The record indicates that Ford was absent from the hearing for a short period[2] during which the only testimony was that of the officer who arrested Hassan. The officer did not testify regarding any event in which Ford was involved prior to Ford's arrival in the courtroom.

"In *McGinnis v. State*, 208 Ga. App. 354, 357 (4) (430 SE2d 618) (1993), we held that conducting a pre-trial evidentiary suppression hearing in the defendant's absence, like conducting a trial in the defendant's absence, constitutes prejudicial error. Moreover, the defendant's right to be present at such a hearing can be waived by defense counsel *only* if the waiver is made in defendant's presence, or with the defendant's express authority, or if the defendant subsequently acquiesces to the waiver made by counsel. (Cit.)" (Punctuation omitted.) *Deal v. State*, 213 Ga. App. 131 (443 SE2d 713) (1994).

The record clearly shows that Ford's absence was before the jury was sworn, and thus before jeopardy attached, and we are unable to conclude that he waived his right to be present, as the State argues. *Deal*, 213 Ga. App. at 132. Nevertheless, given that the substance of the testimony which Ford missed did not involve him in any way, the court's decision to proceed in his absence constituted, at most, harmless error. Unlike the situation in *Perry v. State*, 216 Ga. App. 749 (1) (456 SE2d 89) (1995), where the defendants were absent during lengthy testimony regarding the co-defendant's alibi, here Ford was

---

[2] The transcript shows the testimony constituted five pages of questions and answers.

absent very briefly from a hearing as to the voluntariness of the co-defendant's statement and the brief portion of testimony which Ford missed involved the circumstances surrounding Hassan's arrest. The testimony could not have harmed Ford since it could have had no effect on the verdict rendered against him. See generally *Wanzer v. State*, 232 Ga. 523, 525 (1) (207 SE2d 466) (1974); compare *Wilson v. State*, 212 Ga. 73, 74-75 (90 SE2d 557) (1955). Accordingly, no new trial is required.

4. In his fourth enumeration, Ford argues that the trial court erred in allowing Hassan's improperly redacted statement to be read to the jury. As redacted, Hassan's statement referred to "seven of us," who were involved in the robbery. In the redacted version, Hassan names two of the other individuals involved in the robbery and does not name Ford. Citing *Hall v. State*, 161 Ga. App. 521 (1) (289 SE2d 313) (1982), and other cases, Ford contends that the manner in which the court redacted the statement indicated to the jury that the person holding the gun in the robbery was Ford and that any reference to his existence should have been eliminated. Although the court instructed the jury that the statement was to be considered only as it related to Hassan and not against Ford, Ford argues that it was clear that the statement referred to him.

After reviewing the redacted statement, we conclude, contrary to Ford's arguments, that it was not apparent from Hassan's statement that he referred to Ford. "Evidence of the confession of a co-defendant implicating a defendant cannot be admitted against that defendant at a joint trial where the co-defendant does not take the stand and is not available for cross examination. [Cits.] The implication of another defendant must be direct. It is not a *Bruton* violation if the redacted confession identifies the defendant only through the jury's making connections with other evidence and drawing inferences. [Cit.] The statements standing alone must clearly inculpate the defendant. [Cits.] *Owens v. State*, 193 Ga. App. 661, 662 (3) (388 SE2d 712) (1989). As in *Owens*, the co-defendant's statements were not inculpatory of [Ford]." (Punctuation omitted.) *Walker v. State*, 213 Ga. App. 407, 412 (7) (444 SE2d 824) (1994).

5. Finally, Ford argues that the trial court erred by allowing the victim to make an in-court identification in that the pre-trial identification procedure was unnecessarily suggestive and there was a substantial likelihood of misidentification. Ford argues that it was dark when the identification was made; that the victim saw the perpetrator briefly; that she initially gave a different description of Ford — particularly of his hair; and that the photographic lineup procedure was tainted.

The trial court held a pre-trial hearing on Ford's motion to suppress the photographic identification. An investigating detective testi-

fied at the hearing and at trial that on August 11, 1993, the victim positively identified Ford from a photographic lineup as the person with the handgun. He testified that the victim selected Ford's picture from an envelope which contained six photographs.

The victim testified at the hearing and at trial that she saw Ford's face clearly on the evening of the crime and that he was standing nearby at the time she saw him. She stated that the area in which she observed him was lighted, and that she viewed his face for two to three seconds while he was tapping on the window with the gun and that she observed him again when she got out of the car. She stated that she was given several photographs in a pile, which she then went through. She testified that she had no problem identifying Ford's picture in the photographic lineup and that she was certain of her selection of Ford's picture. She stated that she also selected Ford at juvenile court as the perpetrator with the gun. She stated that she remained certain of her selection of Ford's photograph and that she based her identification on his high cheek bones, slender face, slim build, and the tone of his skin.

"Whether a subsequent in-court identification is tainted depends on all the circumstances of the case. Conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citations and punctuation omitted.) *Daniels v. State*, 207 Ga. App. 689, 691 (4) (428 SE2d 820) (1993).

Here, Ford raises no specific arguments as to how the photographic lineup was impermissibly suggestive, and after reviewing the testimony and the photographs in the record, we find that it was not impermissibly suggestive.

Even assuming arguendo that the photographic identification procedure was impermissibly suggestive, "exclusion is mandated only if there was also a substantial likelihood of irreparable misidentification. The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation." (Citations and punctuation omitted.) *Jenkins v. State*, 215 Ga. App. 540, 542 (2) (451 SE2d 457) (1994); see also *Banks v. State*, 203 Ga. App. 355, 356 (416 SE2d 866) (1992).

"Applying the foregoing, we are satisfied from our review of the record that the identification procedure used in the instant case did not result in a substantial likelihood of misidentification. Further-

more, even if a pre-trial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin." (Citation and punctuation omitted.) *Jenkins*, 215 Ga. App. at 542. The victim's testimony established that her identification had an independent origin, and we are satisfied, considering the totality of the circumstances, that the trial court did not err in denying defendant's motion to exclude the in-court and pre-trial identification of Ford.

*Judgment affirmed. Ruffin, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur, but not in all that is written in Divisions 2 and 3 of the opinion.

Regarding Division 2, in *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991), the Georgia Supreme Court made abundantly clear that "in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative. . . . [S]uch a comment will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense."

In this case, the district attorney asked Detective Berry: "Now, Detective, when you took Keith Ford into custody did you take any biographical information or make note of his weight or height at that time?" The witness responded: "I read Mr. Ford his *Miranda* warnings and he refused to give a statement — ." Immediately, defense counsel, the prosecutor, and the court recognized that a violation of the rule had occurred and, because defense counsel objected, the jury was sent out. After discussion, the jury returned and the court gave instructions meant to neutralize the poison, but defendant insisted on a mistrial, which the court denied.

Defendant urges that his case is similar to *Gibbs v. State*, 217 Ga. App. 614 (458 SE2d 407) (1995), where the court reversed the conviction because of the reference to defendant's refusal to give a statement. It is distinguishable because the prosecutor in that case elicited the forbidden information, exacerbated the problem by referring to the absence of a statement in another question, and in effect contrasted defendant's silence with the victim's testimony-confirming statement to the police; and the court gave no curative instructions. Here there were appropriate instructions, and the district attorney was not one of the culprits. Nor did defendant's silence constitute a boding presence in the trial, as the court feared there was in Gibbs' trial.

In both cases, however, the evidence against the defendants was not overwhelming, although it was stronger in Ford's case. In addition

to the victim's identification, the co-defendant's redacted statement was read to the jury. It named certain boys who were with him but simply referred to defendant as "one of the boys," a substitute for his name ordered by the court to meet the mandate of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). The jury could connect this with defendant because it was after the police talked to this co-defendant and other witnesses that they went and arrested defendant. See *Walker v. State*, 213 Ga. App. 407, 412 (7) (444 SE2d 824) (1994). Defendant had not been present in the stolen car when the police caught up with it.

Based on all of the circumstances, I can agree that the jury's hearing the detective's unresponsive answer was harmless in that it did not deprive defendant of a fair trial, of due process. *Gibbs*, supra at 615, citing *Smith v. State*, 244 Ga. 814, 815 (262 SE2d 116) (1979).

The detective, however, should be admonished. He had been with the department for five and one-half years and had been on the major felony robbery unit for a year and a half. His answer was patently unresponsive, and in this regard I do not agree with the majority that it was "inadvertent and unresponsive." He knew or should have known that he was forbidden to refer to defendant's refusal to make a statement. It should not be necessary to reverse convictions in order to assure that this breach does not occur.

Regarding Division 3, I agree that, if defendant did not waive his presence by being late to court,[3] there was error in proceeding without him. I also agree that in this instance it was harmless, but not because it "did not involve him in any way," the test employed in the majority opinion. The defendant must be present "when the court takes any action materially affecting his case." (Citations and punctuation omitted.) *Collins v. State*, 191 Ga. App. 289, 290 (2) (381 SE2d 430) (1989). That is the test. Although Ford was not present when his co-defendant was arrested driving the stolen car the same night the charged crime was committed, those events clearly materially affected defendant because the driver implicated other boys besides the two who were with him as passengers when he was arrested. If the test utilized by the majority were sufficient, Ford would have no right to be present during the questioning of the detective about the events surrounding the chase and arrests at all. These events constituted material portions of the sequence which, when added up, convicted defendant as one of the robbers.

The reason the error, if any, is harmless is because only prelimi-

---

[3] Defendant was still absent when the court started the proceeding at 9:17 even though it had been scheduled for 9:00 a.m. When he did appear, no explanation was offered or asked for, so we cannot determine whether he waived his presence by an inexcusable absence. *Collins v. State*, 200 Ga. App. 71 (1) (406 SE2d 520) (1991).

nary matters were discussed, with respect to what was to be heard and who was to testify, and the detective who obtained a statement from the co-defendant had only begun to describe the circumstances in which he obtained the statement in the youth unit of the police department. He had not begun to describe his conversation with the co-defendant, so Ford was not deprived of hearing about the interview. Any error in this regard was harmless because it "manifestly caused no injury to the accused"; it was not "prejudicial in character." (Citation and punctuation omitted.) *Collins*, 191 Ga. App. at 290.

DECIDED SEPTEMBER 21, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 — 

*Peters, Townsend, Wilson & Roberts, R. Stephen Roberts, J. M. Raffauf*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Desiree L. S. Peagler, Assistant District Attorneys*, for appellee.