S97A0890. BRIDGES v. THE STATE.
(492 SE2d 877)

</div>

SEARS, Justice.
Appealing from his convictions for murder, armed robbery, and

---

[18] *Skelton,* 248 Ga. at 856 (quoting *Barrett,* 235 Ga. at 266).
[19] Id.

aggravated assault,[1] appellant Joseph Bridges raises numerous enumerations pertaining to the trial court's charges to the jury. While we find that, in several instances, portions of the trial court's charge to the jury improperly placed a burden of persuasion on Bridges, having reviewed the entirety of the court's charge, we are satisfied that Bridges' rights of due process were not prejudiced. We also find that any errors associated with the trial court's admission of certain hearsay testimony and prohibition against comment on the State's failure to call a witness were harmless in light of the overwhelming evidence of Bridge's guilt. Finding no other error associated with the adjudication of Bridges' guilt, we affirm.

The evidence introduced at trial was sufficient to warrant a rational finder of fact to determine that Bridges, Chambless and McClendon were riding in a car driven by Vaughn. The car circled several times past a dice game being played outside an apartment. Bridges, Chambless and McClendon left the car; Chambless was carrying a .22 mm handgun, and Bridges obtained a .9 mm handgun from a friend in a nearby car. Several minutes after Bridges, Chambless and McClendon joined the crowd watching the dice game, Bridges drew a gun and ordered everyone present to lie on the ground. The game participants and bystanders complied, holding their money up for Chambless to collect. None of the victims resisted or provoked the robbers. As he was leaving the scene of the crime, Bridges fired a bullet into the back of Derico Cunningham, one of the dice players, as he lay face down on the ground. Bridges then stated, "I shot my man." Within hours, Cunningham died from the wound inflicted by Bridges. Another game participant was wounded by a gunshot fired by Chambless. The trio of criminals then ran to the waiting car and, with Vaughn behind the wheel, they drove off. A bystander followed them in his own truck, and contacted police by cellular phone while in pursuit. The criminals' car crashed and police arrested Chambless at the scene. Bridges and the others were apprehended shortly thereafter.

---

[1] The crimes occurred on September 20, 1993. On February 15, 1994, Bridges was indicted for (a) the malice murder, felony murder, armed robbery and aggravated assault of Cunningham; (b) the armed robbery of Anthony and Kenneth Wright, Tomes and Johnson; (c) the aggravated assault of Wright; (d) the aggravated assault with the intent to rob of Thompson and Bruester. The trial was held on July 12-18, 1994, and Bridges was found guilty on all counts. By order filed on July 27, 1994, he was sentenced to (a) life imprisonment for Cunningham's murder; (b) life imprisonment for the armed robbery counts, to run consecutively to the first sentence; and (c) twenty years each for the aggravated assault counts, to run consecutively to the other sentences. Bridges' new trial motion was filed on August 3, 1994, amended on December 11, 1996, and denied on January 28, 1997. The court reporter certified the transcript of the trial on December 5, 1994. Bridges' notice of appeal was filed on February 26, 1997. The appeal was docketed on March 11, 1997, and it was submitted for decision without oral argument on May 5, 1997.

At trial, Chambless and McClendon identified Bridges as the one who suggested the robbery, initiated the robbery, and shot and killed Cunningham. Vaughn also identified Bridges as a rider in his car and as one who went to and fled from the crime scene, along with Chambless and McClendon. Four robbery victims and a bystander identified Bridges as the one who shot and killed Cunningham; others nearby the scene of the crime identified Bridges as being at the crime scene. The witnesses' testimony identifying Bridges was consistent in all details, including the sequence of events surrounding the crime, the comments and threats Bridges made during the crime, and the clothing worn by Bridges at the crime scene. At trial, Bridges asserted an alibi defense, and testified that he was at his own home at the time the crimes were committed.

1. The evidence introduced at trial, construed most favorably to the verdict, was sufficient to authorize a rational trier of fact to find Bridges guilty of the crimes of which he was convicted.[2]

2. Bridges raises sixteen enumerations of error concerning the trial court's charges to the jury. In considering these enumerations within the context of the entire charge as a whole and the trial record,[3] we find that general charges were given to the jury regarding the State's burden to prove every material allegation of the indictment against Bridges beyond a reasonable doubt, and that Bridges carried no burden of proof whatsoever to disprove any part of the allegations against him. Our review of these general charges shows them to have been altogether accurate, and Bridges does not contend otherwise.

Regarding the charges given to the jury regarding each crime charged against Bridges, we find that:

(a) The trial court correctly charged the jury that if it found that Bridges had committed malice murder, as alleged in count one of the indictment, beyond a reasonable doubt, then it would be authorized to convict him of that crime. The trial court also correctly charged that if the jury did not believe beyond a reasonable doubt that Bridges had committed malice murder, as alleged in count one, then it was required to acquit him of that charge. These charges were accurate, and Bridges does not contend otherwise.

(b) Regarding counts two, three and four of the indictment, for the felony murder, armed robbery, and aggravated assault of Cunningham, the trial court correctly charged the jury that if it found that Bridges had committed those offenses beyond a reasonable doubt, then it would be authorized to convict. However, regarding

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Estelle v. McGuire*, 502 U. S. 62, 72 (112 SC 475, 116 LE2d 385) (1991).

each of these counts, the trial court also charged the jury that:

> If after a consideration of the evidence, you should find that the defendant did not commit [these offenses] beyond a reasonable doubt, then you would be authorized to acquit the defendant.[4]

Thus, while the trial court's charges on these three counts were correct regarding the findings required for a conviction, the trial court's charge to the jury erroneously instructed that, in order to acquit, the jury had to find beyond a reasonable doubt that Bridges did *not* commit the offenses.[5] It is axiomatic that no burden is ever placed on a criminal defendant to establish innocence, and "charges which place any burden of persuasion upon the defendant in criminal cases shall not be given, and such charges will be deemed erroneous and subject to reversal, absent harmless [or] invited error."[6] Because this error directly implicated Bridges' due process right to compel the State to prove beyond a reasonable doubt every element of the crimes with which he was charged, it is of constitutional dimension.[7]

However, it does not follow that reversal is required. First, as stated above, erroneous jury instructions are not judged in isolation, but rather are considered in the context of the entire jury charge and the trial record as a whole to determine " 'whether there is a *reasonable likelihood* that the jury has applied the challenged instruction in a way that violates the Constitution.' "[8] Second, an erroneous jury charge is not reversible unless it causes harm.[9]

Applying these principles to this case, we cannot say that, under the circumstances of this case, there was a reasonable likelihood that the jury applied the incorrect charges so as to permit convictions for felony murder, armed robbery, and aggravated assault without compelling the State to prove every element of those crimes beyond a reasonable doubt. The trial court charged the jury correctly that before it could convict, it first had to find beyond a reasonable doubt that

---

[4] This quote is from the trial court's charge on felony murder. The charges on the underlying felonies of armed robbery and aggravated assault were identical, except that they instructed that if the jury found Bridges had not committed those offenses beyond a reasonable doubt, then it was "required to acquit."

[5] As a point of reference, the Pattern Jury Instructions direct that the jury should be charged that "If [it does] not believe that the defendant is guilty, or if [it has] any reasonable doubts as to the defendant's guilt," then it must acquit. Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II, p. 67 (1991).

[6] *State v. Moore*, 237 Ga. 269, 270 (227 SE2d 241) (1976).

[7] See *Rose v. Clark*, 478 U. S. 570, 590 (106 SC 3101, 92 LE2d 460) (1986).

[8] *Estelle*, 502 U. S. at 72; (quoting *Boyd v. California*, 494 U. S. 370, 380 (110 SC 1190, 108 LE2d 316) (1990)) (emphasis supplied).

[9] See OCGA § 5-5-24 (c).

Bridges committed those crimes — an instruction that was reiterated several times during the trial court's general charges that the State bore the burden of persuasion beyond a reasonable doubt as to every element of the crimes charged. Of course, as discussed, the trial court also incorrectly charged that the jury had to acquit if it found that Bridges did not commit the crimes beyond a reasonable doubt. Looking at the entire charge as a whole, especially the general charges regarding the State's burden of persuasion before a conviction could be rendered, we cannot say that there is a reasonable likelihood that the incorrect charges regarding when the jury must acquit negated the correct charges regarding what findings had to be made before a conviction could be rendered.[10] Under the trial court's instructions, the jury simply could not convict on anything less than a reasonable doubt standard. Accordingly, while we find the jury charges discussed above to have been erroneous, they did not create a reasonable likelihood that Bridges could have been convicted under a constitutionally deficient standard, and thus they were harmless.

(c) Similarly, regarding counts five, seven, eight and nine (representing three armed robbery counts and one count of aggravated assault), the trial court correctly charged that the jury could not convict unless it found beyond a reasonable doubt that Bridges committed the offenses, and incorrectly charged that the jury should acquit if it found that Bridges did not commit the offenses beyond a reasonable doubt. As discussed above, having examined the charge as a whole, especially the general charges regarding the State's burden of proof before a conviction could be rendered, we cannot say that there is a reasonable likelihood that the incorrect charges regarding when the jury must acquit negated the correct charges regarding what findings had to be made before a conviction could be rendered. Under the trial court's charge, the jury simply could not convict on these four counts unless and until it determined beyond a reasonable doubt that Bridges was guilty.[11] Thus, Bridges' enumerations concerning these charges are rejected.

(d) Having reviewed the trial court's charges on counts six (for armed robbery), and ten and eleven (for aggravated assault with the intent to rob), we determine that the trial court correctly charged that the jury could not convict unless it found beyond a reasonable doubt that Bridges committed the offenses, and correctly charged

---

[10] See *Siegel v. State*, 206 Ga. 252, 253-254 (56 SE2d 512) (1949) (a profusion of correct charges regarding the State's burden of proof may counterbalance an incorrect charge that effectively diminishes the presumption that the defendant is innocent). But see *Williams v. State*, 267 Ga. 771, 778-779 (482 SE2d 288) (1997) (Sears, J., dissenting) (where no accurate charge is given regarding an essential element of the crime charged, it is possible for the jury to convict on an unconstitutional standard, and reversal is required).

[11] See *Siegel*, supra.

that if it found that Bridges did not commit the offenses (or, as was charged with regard to count six, if the jury had reasonable doubts about whether he committed armed robbery), it was required to acquit. Thus, we reject Bridges' enumerations regarding those charges.

(e) Having reviewed the charge as a whole, we reject Bridges' contention that the trial court's charge on accomplice testimony improperly suggested that the State's witnesses and Bridges were accomplices, and thus constituted an expression of opinion by the court as to Bridges' guilt.[12] Contrary to Bridges' contention, the trial court did not impermissibly shift the burden of persuasion to him by presuming in its charge that the State's witnesses were involved in committing the crimes with which Bridges was charged.[13]

Similarly, we find that the trial court's charge, taken as a whole, required the jury to find beyond a reasonable doubt that Bridges was a party to the crime, and we reject Bridges' contrary argument. We also find that, with regard to Bridges' alibi defense, the trial court correctly charged that the State bore the burden of proving beyond a reasonable doubt that Bridges was present at the scene of the crime, and therefore we reject Bridges' contention that the trial court's charge impermissibly placed the burden on him to prove his alibi. Finally, having reviewed the transcript, we conclude that in making its charge, the trial court did not improperly comment to the jury regarding its opinion of Bridges' alibi defense by instructing that "an alibi which still leaves it possible for the accused to be guilty is no alibi at all," and we reject as meritless Bridges' contention that the court's charge on alibi was confusing.

(f) The trial court charged the jury that:

> A person of sound mind and discretion is presumed to intend the natural and probable consequences of his act . . . and if a person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily employed to produce death of a human being, the law presumes the intent to kill. This presumption may be rebutted, and if the State proves that the defendant [committed murder as charged] by use of a deadly weapon in a manner likely to produce death, then the killing is presumed to be intentional and malicious, unless as stated, in circumstances of alleviation, excuse or justification appear from [sic] your satisfaction from the evidence.

---

[12] See *Ladson v. State*, 248 Ga. 470, 477-478 (285 SE2d 508) (1981).
[13] See id.

As held by the United States Supreme Court in *Sandstrom v. Montana*,[14] and reiterated in later cases,[15] this charge was erroneous because it impermissibly shifted the burden of proof on a material element of a crime charged against Bridges. As a material element of malice murder, the intent to kill must be proven beyond a reasonable doubt by the State. In its charge, the trial court instructed the jury that two mandatory presumptions exist with regard to the intent element. First, the jury was told that the intent to kill is presumed when one uses a deadly weapon in a manner ordinarily employed to cause death. Second, the jury was instructed that intent and malice were presumed if the State proved that the defendant used a deadly weapon in a manner likely to result in death. Although the trial court mentioned that the first presumption was rebuttable, the mandate to apply the presumption was left in place,[16] and reiterated by the trial court's instruction on the second presumption. "So long as the jury could infer that [Bridges] was required to produce more than 'some' evidence in order to rebut the [intent] presumption, the instruction impermissibly shifted the burden of proof."[17] Thus, as conceded by the State, these portions of the jury charge were erroneous.

However, an impermissible *Sandstrom* instruction is harmless so long as the instruction was applied to an element of the crime that was not at issue in the trial, and if the evidence of guilt is overwhelming.[18] As discussed above, Bridges' defense at trial was non-involvement in the crime — he claimed an alibi precluded any possibility he participated in the robbery and murder. Although his defense made no concession regarding intent or malice, it also made no claim of a lack of mens rea. While the burden of proof on those essential elements remained on the State, Bridges did not contest them or raise them as alternative defenses, and they were not placed in issue at trial.[19]

Furthermore, the evidence of Bridges' guilt was overwhelming, as it included the testimony of numerous eyewitnesses, all of which was consistent in every detail. Finally, the evidence was overwhelming that the murder of Cunningham was done with intent and

---

[14] 442 U. S. 510, 513 (99 SC 2450, 61 LE2d 39) (1979).

[15] See *Yates v. Evatt*, 500 U. S. 391, 400-401 (111 SC 1884, 114 LE2d 432) (1991), overruled on other grounds, *Estelle*, supra; *Trenor v. State*, 252 Ga. 264, 265-266 (313 SE2d 482) (1984).

[16] *Yates*, 500 U. S. at 402.

[17] *Davis v. Kemp*, 752 F2d 1515, 1518 (11th Cir. 1985); see *Sandstrom*, 442 U. S. at 517.

[18] *Davis*, 752 F2d at 1521. See *Engle v. Koehler*, 707 F2d 241, 246 (6th Cir. 1983), aff'd, 466 U. S. 1 (104 SC 1673, 80 LE2d 1) (1984) ("the prejudicial effect of a *Sandstrom* instruction is largely a function of the defense asserted at trial.").

[19] *Davis*, supra. But see *Trenor*, 252 Ga. at 265-266 (where the defense asserted is a lack of intent to kill, a *Sandstrom* instruction requires reversal).

malice[20] — he offered no resistance to the robbery, but rather complied with the robbers' demands and immediately relinquished his money, and was shot in the back as he lay prostrate on the ground, with his murderer later gloating about the killing. Accordingly, we determine that the *Sandstrom* error in this case was harmless.

3. A police officer testified on behalf of the State that after the crimes occurred, he spoke with Michael Tidwell, who claimed that he knew the first names of those persons involved. The police officer also testified that based upon his conversation with Tidwell, he knew the first names of Bridges, Chambless and McClendon. Tidwell did not, however, testify at trial and the trial court granted the State's motion in limine prohibiting defense counsel from commenting during closing arguments on the State's failure to call Tidwell as a witness.

In *Morgan v. State*,[21] which applies to this appeal,[22] this Court ruled that defense counsel may comment upon the State's failure to present certain witnesses, so long as there is competent evidence before the jury that the missing witness has knowledge of material and relevant facts. Because the police officer's testimony in this case was properly before the jury, and related that while investigating the crimes, the officer obtained information from Tidwell indicating that Bridges was one of the perpetrators, the trial court erred by prohibiting Bridges from commenting on the State's failure to produce Tidwell as a witness.

We conclude, however, that the error is not reversible because it is highly improbable that it contributed to the jury's verdict.[23] Even if the trial court had permitted Bridges to comment on the State's failure to call Tidwell, that single comment and the reasonable inferences to be drawn therefrom would not have been exculpatory in light of the overwhelming evidence of Bridges' guilt, which included numerous eyewitness identifications, all of which were consistent.[24]

4. Bridges was not prohibited from questioning witnesses about pending criminal charges against them, and there was no error in the trial court's grant of the State's motion in limine regarding such questioning, which merely required defense counsel to employ proper procedures in such questioning.

---

[20] There is some discrepancy in the case law as to whether the proper inquiry·on this point is overwhelming evidence of guilt, or overwhelming evidence of intent and malice. See *Davis*, 725 F2d at n. 10 and accompanying text. This Court need not resolve this discrepancy in this appeal, however, as here there exists overwhelming evidence of guilt, intent, and malice.

[21] 267 Ga. 203 (476 SE2d 747) (1996).

[22] See *Taylor v. State*, 262 Ga. 584, 586 (422 SE2d 430) (1992).

[23] See *Sterling v. State*, 267 Ga. 209, 213 (477 SE2d 807) (1996); *Crowe v. State*, 265 Ga. 582, 592 (458 SE2d 799) (1995).

[24] See *Sterling*, supra.

5. Having reviewed the array of photographs used in the photographic lineup that resulted in several witnesses identifying Bridges as having been involved in the crimes, we determine that the array was not so impermissibly suggestive as to cause a substantial likelihood of misidentification, and thus the trial court did not err in denying Bridges' motion to suppress his pre-trial identification.[25]

6. Any error associated with the trial court's admission of hearsay statements made by Tidwell to police investigators was harmless in light of the fact that the statements were cumulative of other evidence that was properly admitted.[26] The admission of hearsay statements made by Bridges' father to police investigators was harmless in light of the overwhelming evidence of Bridges' guilt.[27]

7. After a witness, in a comment unresponsive to a question, stated that he knew Bridges while both were held in juvenile detention, the trial court gave curative instructions to the jury, directing that it should disregard the comment. Accordingly, the trial court did not err in denying Bridges' renewed mistrial motion.[28]

8. Finally, Bridges claims that he was denied the effective assistance of counsel, based upon purported instances of deficient representation,[29] and that the trial court erred in denying his new trial motion. Having reviewed the transcript of the new trial hearing, we find that the alleged instances of ineffectiveness were either strategic decisions, or caused no prejudice to Bridges' defense,[30] and we reject this enumeration.

9. This State does not recognize the cumulative error rule,[31] and we decline to do so under the circumstances of this appeal. Having found conclusively that each of the errors made by the trial court in this matter did not prejudice Bridges' rights to a fair trial and a constitutional adjudication of guilt, his convictions are affirmed.

The instances of error that occurred in this multi-count felony trial prompt us to note that it was presided over by a pro hac vice

---

[25] See *Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972).

[26] *Fetty v. State*, 268 Ga. 365, 368 (489 SE2d 813) (1997).

[27] See *Massey v. State*, 268 Ga. 36, 37 (485 SE2d 200) (1997).

[28] See *Ford v. State*, 219 Ga. App. 562 (466 SE2d 11) (1995).

[29] Bridges claims counsel was ineffective for (1) failing to cross-examine witnesses about pending criminal charges; (2) failing to object to an improper motion in limine regarding those charges; (3) failing to adequately cross-examine witnesses about purported deals made in exchange for testimony; and (4) failing to object to testimony given that concerned Bridges' exercise of his right to remain silent. At the motion for new trial hearing, defense counsel testified that (1) he did not ask about the pending charges for strategic reasons; (2) he did not object to the motion in limine because it did not hamper his ability to question witnesses about pending charges; (3) he did adequately cross-examine witnesses about deals made in exchange for their testimony; and (4) he did not believe that any testimony commented on Bridges' right to remain silent.

[30] See *Lamb v. State*, 267 Ga. 464 (479 SE2d 719) (1997).

[31] *Jenkins v. State*, 268 Ga. 468 (491 SE2d 54) (1997).

magistrate designated by the Chief Magistrate of Fulton County pursuant to statutory authority.[32] While that fact alone does not raise questions of constitutional dimension,[33] we take this opportunity to state, as previously cautioned by Presiding Justice Fletcher, that the potential for trial error — harmless and harmful — is heightened when individuals without adequate judicial training and experience are assigned to preside over complicated and difficult felony trials.[34] While we are convinced that the errors in this matter were altogether harmless, different consequences in a different case would frustrate the efficient use of judicial resources, and actually would thwart the intent of legislation permitting the appointment of pro hac vice magistrates. Because of the inherent difficulty associated with complex felony prosecutions, and the serious consequences that may stem from judicial error in those trials, we reiterate Presiding Justice Fletcher's directive that superior courts would do well by not assigning part-time magistrates to preside over such trials.

*Judgment affirmed. All the Justices concur, except Benham, C. J., and Fletcher, P. J., who dissent.*

THOMPSON, Justice, concurring.

I concur in the opinion of the court. I write separately, however, to voice my concerns about the *Sandstrom*[35] error in this case.

All too often, this Court has been called upon to determine whether the giving of a *Sandstrom* charge in a particular case is harmless error. There is no good reason why the court should have to undertake this exercise. After all, *Sandstrom* has long been the law, and this Court has long held that a charge which can be construed as a mandatory presumption is error.[36] Accordingly, I beseech the trial judges of this State to eliminate the *Sandstrom* charge from their charge books. Simply put, the charge is erroneous and should not be given.

FLETCHER, Presiding Justice, dissenting.

I dissent because the numerous burden shifting charges left the jury without appropriate guidance in deciding this case.

In Division 2 (b) the majority acknowledges that the trial court's charge on the *burden of proof for seven felony counts* is error, but harmless. However, there is no way for this Court to know whether the jury followed the few correct charges or the court's erroneous

---

[32] See OCGA § 15-1-9.1.

[33] See *Massey v. State*, 265 Ga. 632 (458 SE2d 818) (1995).

[34] Id., 265 Ga. at 637; see Ga. Const. of 1983, Art. VI, Sec. IV, Par. I.

[35] *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979).

[36] See *Trenor v. State*, 252 Ga. 264, 265 (313 SE2d 482) (1984).

charges that the jury was authorized to acquit if it "should find that the defendant did not commit [the seven charged felony offenses] beyond a reasonable doubt." Additionally, in Division 2 (f) the majority acknowledges a *Sandstrom* violation, which, like the other seven erroneous charges, also shifts the burden of proof on the material element of intent.[37] Without being a mind reader, I see no logical or legal way to conclude that these egregious errors on the fundamental element of the state's burden of proof are harmless, and, therefore, I would reverse.

Another concern in this case is the mere fact of 11 errors of a substantial nature. The fact that the record in this case is so rife with errors reinforces the plea made in *Massey v. State*[38] against the use of magistrates to conduct complex felony cases.

I am authorized to state that Chief Justice Benham joins in this dissent.

DECIDED NOVEMBER 24, 1997.

*Jonathan D. Gaul,* for appellant.
*Paul L. Howard, District Attorney, Carl P. Greenberg, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.

[37] *Sandstrom v. Montana,* 442 U. S. 510, 513 (99 SC 2450, 61 LE2d 39) (1979).
[38] 265 Ga. 632 (458 SE2d 818) (1995) (Fletcher, J., concurring specially).