296 Ga. 396
FINAL COPY

S14A1411.  RIVERS v. THE STATE.

THOMPSON, Chief Justice.

Appellant Michael Rivers was convicted of felony murder in connection with the death of Donald Tanks III and possession of cocaine with intent to distribute and sentenced to life imprisonment.[1]  He appeals on several grounds from the trial court's denial of his motion for new trial, and for the reasons that follow, we affirm.

1.  Viewed in the light most favorable to the verdict, the jury was authorized to find that on June 10, 2008, the victim and his friends, Marcus Clark, Dina Canada, Joseph Moore, and George Sullivan were returning to Moore's house after an evening out.  Clark arrived first, so he parked his vehicle

---

[1] The crimes were committed on June 10, 2008.  Appellant was indicted on April 7, 2009, and charged with malice murder, felony murder, aggravated assault, aggravated battery, and possession of cocaine with the intent to distribute.  His trial commenced on March 2, 2010, and the jury returned its verdict on March 11, 2010, finding appellant guilty of all charges except malice murder.  Appellant was sentenced on March 22, 2010, to imprisonment for life for felony murder and a consecutive term of imprisonment for 30 years for the possession count.  The remaining counts merged with the felony murder count.  Appellant filed a motion for new trial on March 18, 2010, which was amended on July 18, 2011, and denied by the trial court on July 31, 2013.  A notice of appeal was filed on August 19, 2013.  The case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

in a driveway across the street to wait for his friends. Appellant, who was selling cocaine on the street corner with several other individuals, asked his cousin, Gerry Perrymond, to see who was in Clark's vehicle. Perrymond walked up to and around Clark's vehicle, causing Clark to become concerned for his safety. Clark called his friends to see where they were, and when they arrived, Clark pointed out Perrymond.

Sullivan and Perrymond then exchanged words in the street. As their verbal altercation turned physical, Canada, who lived with Moore, asked them to stop and went to talk to the man in the group on the street whom she knew to be their leader. She asked that individual not to involve others in the fight and not to escalate the situation. By that time, the altercation between Perrymond and Sullivan had ended, and Sullivan was walking back toward Moore's house. Appellant, who had been standing some distance from the scene, approached Tanks, who was standing behind Canada, and punched him in the face, causing Tanks to fall and hit his head on a concrete step. Tanks remained in a coma for several weeks, emerging from the coma only a few days before his death. The medical examiner determined the cause of death was delayed effects of blunt force trauma to the head, and more specifically, a blood clot that developed in

2

Tanks' legs that ultimately traveled to his lungs, cutting off oxygen to his brain. Appellant admitted under oath at a preliminary hearing that he was selling cocaine on the night of the crimes and that he hit Tanks. At trial, his defense was that Tanks struck him first and he hit Tanks in self-defense. Perrymond testified at trial that he and appellant were on the street selling crack cocaine the night of the crimes.

This evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Although appellant argues the trial court should have dismissed the count of the indictment charging him with possession of cocaine with the intent to distribute, we find the evidence presented at trial, including appellant's sworn admissions at a pre-trial hearing and Perrymond's corroborating testimony, was sufficient to establish beyond a reasonable doubt that appellant was selling cocaine on the night of June 10, 2008.[2] See Burg v. State, 298 Ga. App. 214,

---

[2] We find no merit in appellant's argument that the absence of a transcript of the preliminary hearing during which he admitted that he was selling cocaine on the night of June 10, 2008, renders evidence of his statement inadmissible under the Confrontation Clause. The constitutional right to confront witnesses has no application where what is offered against a criminal defendant is the defendant's own statement and he has the opportunity to confront and cross-examine the witness through whom this statement is presented. See U. S. Const. Amend. VI (giving accused the right

3

216-217 (679 SE2d 780) (2009). See also Chancey v. State, 256 Ga. 415, 421-422 (349 SE2d 717) (1986) (State may rely on circumstantial evidence to prove a substance is an illegal drug). Moreover, because appellant's pre-trial admissions were direct evidence of his guilt of the possession charge, the State's case was not based solely on circumstantial evidence. See Rodriguez-Nova v. State, 295 Ga. 868 (763 SE2d 698) (2014); Brown v. State, 291 Ga. 750, 752 (733 SE2d 300) (2012) (accused's own testimony may be used to corroborate an accomplice's testimony against him).

2. Appellant contends the trial court erred by refusing to strike prospective Juror Number 20 for cause after Juror 20 indicated he had strong opinions about illegal narcotics. "The decision to strike a potential juror for cause lies within the sound discretion of the trial court and will not be set aside absent some manifest abuse of that discretion." Abdullah v. State, 284 Ga. 399, 400 (2) (667 SE2d 584) (2008). There is no manifest abuse of discretion "unless it is shown that the juror's opinion 'is so fixed and definite that (he or she) will be unable to set the opinion aside and decide the case based upon the evidence' and the trial court's instructions." (Footnote omitted.) Miller v. State,

to be confronted with the witnesses against him).

4

275 Ga. 730, 736 (5) (571 SE2d 788) (2002).

The record in this case demonstrates that although Juror 20 indicated his strong dislike for illegal narcotics, he also stated he would be able to reach a verdict based on the evidence presented at trial and the law on which the trial court instructed him, that he could return a not guilty verdict if the State did not carry its burden at trial, and that he could try to set his emotions aside and decide the case on its merits. Under these circumstances, we cannot say the trial court abused its discretion by finding that Juror Number 20's opinion was so fixed and definite that he could not decide the case based on the evidence introduced at trial. Accordingly, the trial court did not err by refusing to excuse this juror for cause. See Head v. State, 276 Ga. 131, 133 (2) (575 SE2d 883) (2003).

3. The State presented evidence at trial of two statements made by appellant to police. In the first, made a few weeks after the assault on Tanks, appellant told a police officer who was canvassing the streets for possible witnesses that he was not present at the time Tanks was assaulted and he did not know who hit him. The second statement was made after appellant learned that detectives wanted to talk to him and that a detective told Perrymond that

5

appellant should contact police or he could be charged with murder. On his own initiative, appellant then went to the police station, where he admitted he was present at the time of the assault but continued to assert that he did not know who hit Tanks. Appellant was not placed under arrest at any point during the giving of either statement, and at the end of the interview at the police station, he was allowed to go home. The trial court admitted appellant's statements over a defense objection, finding they were made voluntarily. Appellant contends the detective's comment to Perrymond suggested that appellant would be charged with murder unless he talked with police, thereby rendering his statements inadmissible at trial because they were given out of fear and with the hope of leniency.[3]

Under former OCGA § 24-3-50,[4] for a confession to be admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury.

Under Georgia law, only voluntary incriminating statements are

_____

[3] Appellant did not contend in the trial court and does not contend on appeal that his statements were made in violation of Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[4] Under the new Evidence Code, effective January 1, 2013, this language is codified at OCGA § 24-8-824.

admissible against the accused at trial, and the State has the burden of proving the voluntariness of a confession by a preponderance of the evidence. State v. Ritter, 268 Ga. 108 (1) (485 SE2d 492) (1997). . . ."The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect." White v. State, 266 Ga. 134 (3) (465 SE2d 277) (1996). Generally, the "hope of benefit" to which the statute refers has been construed as a hope of lighter punishment. [Cits.]

Foster v. State, 283 Ga. 484, 485 (660 SE2d 521) (2008). Whether a statement was made voluntarily is determined by assessing the totality of the circumstances. Vergara v. State, 283 Ga. 175 (1) (657 SE2d 863) (2008).

Contrary to appellant's assertion, we find no evidence in the record that detectives threatened appellant with injury if he did not make a statement or that he was given any promise of leniency if he did. Appellant's personal belief that talking to detectives would gain him favor from the State does not render his statements involuntary under former OCGA § 24-3-50, see Evans v. State, 277 Ga. 51, 52-53 (2) (586 SE2d 326) (2003), and the detective's statement to Perrymond about a potential murder charge was not a threat of injury in the event appellant chose not to speak to police but was an accurate description of the seriousness of the crimes and the situation appellant faced. See Johnson v. State, 295 Ga. 421 (2) (761 SE2d 13) (2014) (detective's statement that

defendant could be charged with murder was a true statement emphasizing gravity of the situation the defendant faced); Preston v. State, 282 Ga. 210 (2) (647 SE2d 260) (2007) (officer's discussion about punishment was no more than explanation of the seriousness of defendant's situation). Under these circumstances, the trial court's ruling that appellant's statements were voluntarily made was not erroneous.

4. Appellant contends the trial court erred by allowing the State to present as similar transaction evidence the testimony of Sina Polk, appellant's former girlfriend, regarding a prior incident in which appellant was selling drugs and hit her in the face during an argument. Under Georgia law applicable at the time of appellant's trial,[5] evidence of a similar transaction may be admitted if the State shows that

> (1) it seeks to introduce the evidence not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of

---

[5] Because appellant was tried before January 1, 2013, Georgia's old Evidence Code applies in his appeal. Under the new Evidence Code, admissibility of this category of evidence is governed by OCGA § 24-4-404 (b).

the former tends to prove the latter.

(Citation and punctuation omitted.) Matthews v. State, 294 Ga. 50, 52 (751 SE2d 78) (2013). In evaluating the trial court's ruling, we accept its factual findings unless clearly erroneous and review its decision to admit the similar transaction evidence under the abuse of discretion standard. Reed v. State, 291 Ga. 10 (3) (727 SE2d 112) (2012).

The State offered evidence of appellant's assault on Polk and his prior sale of drugs for the purpose of showing appellant's course of conduct and bent of mind and offered Polk's identification of appellant as evidence that he committed the prior offenses. The trial court found the prior incident sufficiently similar because in both instances appellant was involved with and selling drugs and used his fists to resolve a dispute. Although the victim of the prior assault was known to appellant and in this case the victim was a stranger, when determining whether evidence of a similar transaction is admissible "'the proper focus is upon the similarities between the incidents and not upon the differences.' [Cit.]" Daniels v. State, 281 Ga. 226, 228 (637 SE2d 403) (2006). Viewed in this manner, we find no abuse of discretion in the trial court's decision to admit Polk's testimony at trial.

5. During trial, George Sullivan testified that he was not the aggressor in his altercation with Perrymond. Appellant sought on cross-examination to impeach Sullivan by offering evidence of Sullivan's 1995 first offender plea to a charge of aggravated assault. The trial court ruled the first offender plea could not be used as impeachment evidence, and appellant challenges this ruling.

We find no abuse of the trial court's discretion in prohibiting appellant from impeaching Sullivan with the first offender plea. Because first offender status is not considered an adjudication of guilt, a first offender plea cannot be used to impeach a witness on general credibility grounds. See Sanders v. State, 290 Ga. 445 (2) (721 SE2d 834) (2012); Matthews v. State, 268 Ga. 798 (4) (493 SE2d 136) (1997). A first offender plea may be used to demonstrate a witness' bias or motive to testify in favor of the State while the offender remains under that sentence, see id.; however, appellant made no argument that Sullivan's plea was being offered for that purpose, and his sentence had long ago expired. And, even assuming, as appellant argues, that a first offender plea may be used against a witness in a criminal case to disprove or contradict facts to which the witness testifies, see Matthews, supra at 802, n. 2, inasmuch as Sullivan was not the victim of the charged crimes and Perrymond was not the

defendant, evidence of Sullivan's prior act of violence against a third party was not admissible under Chandler v. State, 261 Ga. 402, 407 (3) (b) (405 SE2d 669) (1991), and, quite simply, was not pertinent to the critical fact in question in appellant's justification defense, whether *appellant's* action in striking *Tanks* was justified.

6. During cross-examination of defense witness Vicky Larkin, appellant's girlfriend, the prosecutor asked whether Larkin had "put money on" appellant's prison account while he was awaiting trial and whether on the night of the crimes she had two black eyes. Defense counsel objected and made multiple motions for a mistrial, arguing that the State's questions impermissibly placed appellant's character into evidence. Counsel also asked the trial court to poll the jury for possible prejudice. Appellant enumerates as error the denial of these motions.

It is proper for the State when cross-examining a defense witness to bring out the relationship between the witness and the accused for the purpose of showing bias or to show the probability that the witness is testifying out of fear or under duress. See Burrell v. State, 293 Ga. App. 540, 541-542 (1) (667 SE2d 394) (2008). The State's questions were properly intended to establish the

11

close, personal relationship between Larkin and appellant and to show that she may have been testifying out of fear or intimidation. In conducting such a cross-examination, the State did not place appellant's character in issue in the sense that the evidence must be proscribed, even though the evidence may have incidentally done so. Id. at 541. Similarly, evidence that an accused has been confined in jail in connection with the case at issue does not place his character in evidence. Williams v. State, 242 Ga. 757, 758 (2) (251 SE2d 254) (1978); Walker v. State, 259 Ga. App. 83, 84-85 (1) (576 SE2d 62) (2003). Accordingly, the challenged questions did not improperly place appellant's character in issue, and appellant was not entitled to a mistrial. See Stanley v. State, 250 Ga. 3 (2) (295 SE2d 315) (1982) (applying abuse of discretion standard of review to trial court's denial of motion for mistrial). It follows that the trial court did not abuse its discretion by refusing to poll the jury to determine whether admission of this evidence may have prejudiced appellant.

7. Nor do we find the trial court erred by allowing two witnesses to testify or suggest through their testimony that appellant was a drug dealer. The first witness, Canada, mentioned generally that she knew the people standing on the street corner were drug dealers. This comment occurred as part of her

explanation for why she felt it was important to keep the argument on the street from escalating. The second witness, Perrymond, was allowed to testify that the victim had "brought himself onto the dealer side of the [neighborhood]" where he (Perrymond), appellant, and other individuals were standing. This evidence, admissible to prove the circumstances surrounding the assault on Tanks and to counter appellant's claim that he acted in self-defense, was admissible even though it may have incidentally placed appellant's character into issue. See Speed v. State, 270 Ga. 688, 691 (8) (512 SE2d 896) (1999) (relevant evidence that defendant was a drug dealer did not become inadmissible simply because it incidentally placed defendant's character into evidence). Moreover, even assuming admission of this testimony was error, it was harmless. Evidence that appellant was a drug dealer was merely cumulative of other admissible evidence, including appellant's admission that he was selling drugs on the night of the crimes and the testimony of Isralah Rivers, appellant's sister, that appellant regularly sold drugs on the corner where Tanks was attacked. See Vaughns v. State, 274 Ga. 13, 15 (3) (549 SE2d 86) (2001) (admission of improper testimony is harmless error where testimony is cumulative of other admissible evidence).

8. Because the State provided the required notice of its intent to use appellant's prior convictions in the event he testified at trial and the trial court found the value of this evidence substantially outweighed its potential prejudicial effect, the trial court did not err by finding appellant's prior convictions would be admissible at trial. See former OCGA § 24-9-84.1 (a) (1).

9. Appellant argues the trial court erred by allowing the State to present his sister Isralah's videotaped statement as a prior inconsistent statement. Specifically, he maintains that the videotape was admitted without a proper foundation having been laid and in violation of his right to confront witnesses. We find no error.

In Georgia, the prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible both to impeach the witness and as substantive evidence. Gibbons v. State, 248 Ga. 858, 862 (286 SE2d 717) (1982). See also former OCGA § 24-9-83.[6] Here, Isralah's videotaped statement was admitted at trial after she denied having made certain of the statements and claimed she could not remember the details of what she

_____

[6] OCGA § 24-9-83, in effect at the time of appellant's trial, was repealed effective January 1, 2013. The use of prior inconsistent statements for the purpose of impeachment is now codified at OCGA § 24-6-613 (b).

14

told detectives regarding appellant's comments after the crimes. A proper foundation was laid for admission of Isralah's statement through her testimony that the video recording was a fair and accurate representation of her statement that had not been altered in any way.[7] Moreover, it is clear from the record that appellant had, and took advantage of, the opportunity to cross-examine Isralah about her statement, her memory loss, and reasons for her possible bias against appellant. Accordingly, it was not error to admit this evidence at trial. See United States v. Owens, 484 U. S. 554, 559 (108 SCt 838, 98 LE2d 951) (1988) (Sixth Amendment right to confrontation is satisfied if a defendant is given opportunity to cross-examine a forgetful witness about "[her] bias, [her] lack of care and attentiveness, [her] poor eyesight, and even . . . the very fact that [s]he has a bad memory"); Holiday v. State, 272 Ga. 779 (2) (534 SE2d 411) (2000) (trial court did not err by admitting prior inconsistent statements of witnesses who were available for cross-examination and denied or could not remember giving details to police of what they saw). See also Brown v. State, 266 Ga. 723

---

[7] The prosecutor asked Isralah on direct examination whether the State's videotape fairly and accurately represented what she told detectives. She stated, "Well, some of it, yes." She admitted, however, that the videotape fairly and accurately represented her statement to police and had not been altered in any way, but she explained that she "left something out of her statement."

15

(2) (470 SE2d 652) (1996).

10. Appellant contends the trial court erred by denying his motion for a directed verdict because the State failed to meet its burden of proving that appellant's act of hitting Tanks was the proximate cause of his death. "In a criminal case, proximate cause exists when the accused's 'act or omission played a substantial part in bringing about or actually causing the (victim's) injury or damage and . . . the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.' [Cits.]" (Punctuation omitted.) Skaggs v. State, 278 Ga. 19, 19-20 (596 SE2d 159) (2004). The record evidence demonstrates that appellant hit Tanks in the head, causing Tanks to fall and strike his head on a concrete step. The fall inflicted upon Tanks severe blunt force trauma to his brain and head and caused him to remain in a coma for several weeks before his ultimate death from a blood clot which was caused by his prolonged immobility after the fall. Therefore, appellant was not entitled to a directed verdict because there was evidence authorizing a jury to find beyond a reasonable doubt that Tanks' fall and resulting injuries were either the direct result or reasonably probable consequence of appellant's act of striking the victim. See Stansell v. State, 270 Ga. 147, 148 (1) (510 SE2d 292)

16

(1998) (applying Jackson v. Virginia standard of review to denial of motion for directed verdict of acquittal).

11. On motion for new trial, appellant asserted a claim of ineffective assistance of counsel. To prevail on a claim of ineffectiveness, appellant must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984); Smith v. Francis, 253 Ga. 782, 783 (325 SE2d 362) (1985). "[W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." Suggs v. State, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) Appellant asserts his counsel performed deficiently by advising him not to testify at trial. The record shows that although appellant's counsel, Emily Gilbert, advised appellant not to testify, he elected to take the stand. Appellant changed his mind, however, before giving any testimony, after consultation with another attorney who told appellant he agreed it would not be in appellant's best interest to take the stand. The trial court then advised appellant of his right to testify at trial and confirmed on the record that appellant understood the decision

17

was his to make and that appellant personally decided not to testify. See Harris v. State, 279 Ga. 304 (3) (e) (612 SE2d 789) (2005). Having been informed that he, and not his attorney, makes the ultimate decision whether to testify on his own behalf, appellant cannot complain about his election to follow his counsel's tactical advice. See Davenport v. State, 283 Ga. 171, 174-175 (5) (656 SE2d 844) (2008); Doctor v. State, 275 Ga. 612 (5) (d) (571 SE2d 347) (2002), overruled on other grounds, Jones v. State, 279 Ga. 854, 858 (3) (622 SE2d 1) (2005). Accordingly, we find no error in the denial of appellant's claim of ineffective assistance on this ground.

(b) Appellant's claim that counsel was ineffective by failing to request a speedy trial was not raised in his motion for new trial, and therefore, has not been preserved for appeal. Jones v. State, 294 Ga. 501, 503 (2) (755 SE2d 131) (2014). Even if it had been raised, appellant cannot prevail on this claim because he failed to prove both that counsel's decision not to request a speedy trial was anything other than reasonable trial strategy and that he was prejudiced by counsel's decision not to seek a speedy trial. See Watson v. State, 275 Ga. App. 174, 177 (620 SE2d 176) (2005).

12. To the extent appellant argues he was entitled to a new trial because

18

of an accumulation of alleged errors, Georgia does not recognize the cumulative error rule. <u>Bridges v. State</u>, 268 Ga. 700 (9) (492 SE2d 877) (1997).

<u>Judgment affirmed. All the Justices concur.</u>

Decided January 20, 2015.

Murder. Fulton Superior Court. Before Judge Campbell.

John D. Rasnick, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.